UNITED STATES of America, Plaintiff,

v.

Ricky L. HAMPSHIRE, Defendant.

No. 95–10026–01.

United States District Court,
D. Kansas.

June 14, 1995.

---

Randall K. Rathbun, U.S. Atty., and Brian R. Johnson, Asst. U.S. Atty., Wichita, KS, for plaintiff.

David J. Phillips, Federal Public Defender, and Timothy J. Henry, Asst. Federal Public Defender, Wichita, KS, for defense.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Senior District Judge.

On December 21, 1994, defendant Ricky Hampshire was charged with willful failure to pay a past due child support obligation in violation of 18 U.S.C. § 228. The support obligation arose from a divorce proceeding commenced by Hampshire's ex-wife in Kansas on October 4, 1985. The District Court of Riley County granted an order for temporary custody and support on October 30, 1985, pursuant to K.S.A. 60–1607(b), requir-

ing Hampshire to pay support at a rate of $450.00 per month. Hampshire was personally served with process at the Riley County Jail in Manhattan, Kansas. On January 28, 1986, the court filed a journal entry finding that Hampshire had been properly served and was in default. The court's final order required Hampshire to pay support at a rate of $350.00 per month.

In the present criminal action, Hampshire has been charged with violating the Child Support Recovery Act of 1992 (CSRA), 18 U.S.C. § 228. Subsection (a) of CSRA provides that it is a punishable offense to "willfully fail[ ] to pay a past due support obligation with respect to a child who resides in another State."

Hampshire has moved to dismiss the government's information on several grounds. On June 8, 1995, the court held a hearing in which the United States and the defendant presented oral arguments relating to these motions. Additionally, defendant presented the testimony of Kristy Swenson, an attorney with extensive experience in matters of domestic relations. After examination of the witness by both the defendant and the government, the court has no difficulty in finding Ms. Swenson to be an extremely competent, knowledgeable, and skilled attorney in family law matters. This matter, however, turns upon wholly independent considerations, and the court finds that recourse to the testimony of the witness is unnecessary.

*Constitutionality of 18 U.S.C. § 228*

Hampshire's first motion seeks a determination either that 18 U.S.C. § 228 is unconstitutional or that this court should abstain from exercising jurisdiction in the present action. He first contends that CSRA is invalid because Congress did not explicitly set forth the constitutionally enumerated power supporting the statute, citing *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). He further argues that the CSRA violates the Tenth Amendment by interfering with the state's traditional police powers, and that the CSRA cannot be predicated upon Congress' commerce power.

■ This appears to be the first case directly challenging the validity of the CSRA. The court finds that Hampshire's constitu-

tional arguments must be rejected. Unlike *Bass,* and unlike the Supreme Court's recent decision in *United States v. Lopez,* — U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Congress has explicitly required that the defendant's actions have an interstate nexus. As noted earlier, the CSRA applies only to persons who willfully violate support obligations as to children residing "in another State." The law has no application to domestic relations matters occurring entirely within a given state.

In *Bass,* the Supreme Court upheld the reversal of the defendant's conviction for possession of a firearm in violation of the former 18 U.S.C.App. § 1202(a). The law did not expressly require any connection between the possession of the firearm and interstate commerce. Holding that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance," 404 U.S. at 349, 92 S.Ct. at 523, the Court upheld the reversal of the defendant's conviction because the statute contained no requirement of "proof of some interstate commerce nexus in each case." 404 U.S. at 350, 92 S.Ct. at 524. The Court, however, noted that constitutional requirements would be satisfied by proof that "the firearm received has previously traveled in interstate commerce." *Id.*

Similarly, in the recent *Lopez* decision, the Court, in striking down the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(a)(1)(A), stressed that the statute had "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." — U.S. at ——, 115 S.Ct. at 1631.

The statute in the present case only affects willful violations of interstate child support obligations. The interstate nexus is explicitly identified in the statute. Further, it would appear that the failure to pay child support has an effect on interstate commerce sufficient to comply with constitutional requirements. *See Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In enacting the CSRA, the House of Representatives noted that 3.2 million families lived below the poverty level in 1989. The avoid-

ance of child support obligations exacerbates the problem of child poverty, requiring the government to expend its own resources to help alleviate the problem. Of the $16.3 billion due in child support payments in 1989, only $11.2 billion in payments were actually made. H.R.Rep. No. 771, 102d Cong.2d Sess. at 5 (1992).

Thus, even with the recent decision in *Lopez*, the CSRA remains constitutional. In *Lopez*, the Court held unconstitutional a federal law banning possession of a gun within 1,000 feet of a school. The law contained no requirement that the gun had traveled in interstate commerce. The CSRA would be subject to a similar constitutional infirmity only if it was also directed at a purely local activity—if it attempted, for example, to criminalize avoidance of child support where the parties affected all resided in a single state. But because the requirement of an interstate relationship is one of the explicit elements of the crime created by 18 U.S.C. § 228, the law is constitutional.

Hampshire correctly observes that the majority decision in *Lopez* criticizes as overbroad the position taken in the dissenting opinion of Justice Breyer, creating the potential for congressional regulation of matters traditionally reserved for the states, such as "child rearing." In this context, however, the Court is simply expressing the concern that an unlimited construction of the Commerce Clause would enable Congress to "regulate *any* activity that it found was related to the economic productivity of individual citizens: family law (including marriage, divorce, and child custody), for example." — U.S. at ——, 115 S.Ct. at 1632 (emphasis added). It was this concern that Congress might regulate any aspect of matters traditionally reserved to the states which gave force to the majority's argument. The Court's opinion cannot be read to suggest that *all* federal legislation touching upon domestic relations is necessarily invalid. Where, as here, Congress has determined in a nonarbitrary manner that the willful actions of private individuals have a substantial effect on interstate commerce, it may constitutionally proscribe such actions by legislation which includes an interstate nexus as an explicit element of the offense.

■ Hampshire's argument that the CSRA violates the Tenth Amendment's reservation and infringes the states's police powers is in error. The CSRA creates criminal sanctions for individuals who fail to comply with child support obligations; it makes no attempt to regulate the conduct of the states, as states. It is regulation of purely private conduct, and does not represent a violation of the Tenth Amendment. *See New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *Hodel v. Virginia Surface Min. & Recl. Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

Central to Hampshire's argument is his reliance on the "domestic relations exception," in which federal courts have traditionally refused to exercise jurisdiction over civil cases addressing matters of marriage, divorce, and child custody. *See Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Kirschbaum v. Walling*, 316 U.S. 517, 520, 62 S.Ct. 1116, 1118–19, 86 L.Ed. 1638 (1942); *Ohio v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). The domestic relations exception does not exist by any constitutional requirement; rather, it is a rule of statutory construction, in which the Court has adopted a narrow interpretation of the federal courts' civil diversity jurisdiction to exclude domestic relations cases. *Ankenbrandt*, 504 U.S. at 699–700, 112 S.Ct. at 2213, 119 L.Ed.2d at 480. The rule relates only to the ability of federal courts to grant or alter a decree of divorce or child custody or to award spousal support. Thus, in *Ankenbrandt*, it was held that the doctrine did not bar a diversity action involving a mother's tort claim against her divorced spouse, alleging sexual and physical abuse of her daughters. *Id.* at 704, 112 S.Ct. at 2215, 119 L.Ed.2d at 483.

■ Moreover, because the domestic relations exception is rooted in a narrow construction of the diversity jurisdiction statute, 28 U.S.C. § 1332, the rule has no application where there exists an independent basis for federal jurisdiction beyond diversity of citizenship. The present case does not involve a diversity action directed at obtaining a divorce or child custody decree or for an award

of alimony. It is a criminal action undertaken pursuant to an express grant of jurisdictional authority. 28 U.S.C. § 228. Accordingly, the domestic relations exception has no application.

■ As an alternative basis for avoiding the application of the CSRA, Hampshire argues that the court should apply the abstention doctrine, designed to promote federal-state comity, under which the court may refuse to exercise jurisdiction in a matter which would disrupt the establishment of a coherent state policy. Hampshire seeks abstention under the doctrine as articulated in either *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) or *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Under *Younger*, a court may abstain from jurisdiction so as not to interfere with a pending state criminal prosecution. *Younger*, 401 U.S. at 54, 91 S.Ct. at 755. *Burford* permits abstention from federal jurisdiction over matters traditionally reserved to the states.

■ Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction extended to them, abstention should rarely be invoked. *Colorado River Water Conserv'n Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In the present case, the *Younger* abstention is inapplicable because there are no pending state proceedings. Further, the court finds that the *Burford* abstention is inapplicable because Hampshire has failed to show how the present criminal action interferes with any state proceeding.

In *Ankenbrandt*, the court recognized the potential application of the *Burford* abstention to the child abuse tort claims advanced therein. Such abstention might be warranted, the Court observed

> if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties. Where, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged, we have no difficulty concluding that Burford abstention is inappropriate in this case.

504 U.S. at 706, 112 S.Ct. at 2216, 119 L.Ed.2d at 484.

■ In the present case, the divorce decree and Hampshire's child support obligations are currently fixed. There is no indication that there are other enforcement proceedings against Hampshire at the state level which will be displaced or hampered by the present prosecution. Accordingly, the *Burford* abstention is inapplicable.

It is not for this court to address the wisdom or folly of Congress in adopting the CSRA. Certainly many of the policy arguments advanced by the defendant, relating to the heavy burden that the federalization of interstate child support obligations may place upon the courts, may not be wholly misplaced. But a statute's dubious grounding in public policy is not a basis for a finding of unconstitutionality. The CSRA does not violate the constitutional limitations on Congress' power, and there is no valid reason to abstain from exercising jurisdiction over the present prosecution of Hampshire's alleged actions in breaking the law.

*Due Process Challenge to the Underlying Obligation*

In a separate motion to dismiss the information, Hampshire argues that the present criminal action should be dismissed since it arises from a civil judgment which was not rendered consistent with due process. The underlying decree is infirm and cannot form the basis for the present criminal prosecution. The Supreme Court has held that when a deprivation of liberty in a criminal proceeding is premised on a previous determination in an administrative proceeding, "there must be *some* meaningful review of the administrative proceeding." *United States v. Mendoza–Lopez*, 481 U.S. 828, 838, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) (emphasis in original).

■ Hampshire argues that as an AWOL soldier in custody in the Riley County Jail, he had no meaningful opportunity either to be heard or to appeal the divorce action. *See Boddie v. Connecticut*, 401 U.S. 371, 374–75, 91 S.Ct. 780, 784–85, 28 L.Ed.2d 113 (1971) (requiring at a minimum "a meaningful opportunity to be heard" in judicial proceed-

ings). Hampshire also argues that the award of support in the present action violates the provisions of the Soldiers and Sailors Civil Relief Act, 50 App.U.S.C. §§ 501 *et seq.* The Act prohibits entry of judgment against a person known to be in military service "until after the court shall have appointed an attorney to represent defendant and protect his interests." 50 App.U.S.C. § 520. In the present case, the application for temporary custody and support filed on October 24, 1989 clearly identifies Hampshire as a member of the United States Army who was currently absent without leave. No attorney was appointed to represent Hampshire in the divorce proceeding.

The United States contends that no due process violation occurred, noting that *Boddie,* for example, dealt with the rights of indigents rather than incarcerated persons. Other courts, however, have directly held that it is a violation of the Constitution to prevent prisoners a meaningful opportunity to obtain a divorce. *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 565 (7th Cir.1986); *Corpus v. Estelle,* 551 F.2d 68 (5th Cir.1977).

The court is unable to accept Hampshire's general due process argument. In *Lynk,* the court found a violation of equal protection on the basis of an Indiana requirement that the prisoner be physically present at a mandatory hearing in order to obtain the divorce he sought. In the present case, however, Hampshire has never explicitly articulated what specific provisions of Kansas law prevented him from defending himself in, or appealing, the state divorce decree and the associated award of child support. The court would agree with Hampshire that the default decree violated the provisions of the Soldiers and Sailors Civil Relief Act when the state court did not appoint counsel for him. However, whether that violation justifies the dismissal of the present action is another question.

The United States mistakes the issue as being whether the Soldiers and Sailors Relief Act "'empower[s] this court to collaterally review, vacate or impede t[he] decisions of a state court.'" (Pltf.'s Resp. to Mtn to Dism. Info. Chg.'g Viol. of Stat., p. 7, quoting *Shatswell v. Shatswell,* 758 F.Supp. 662, 663 (D.Kan.1991)). The question, however, is not whether this court can vacate or amend the award of support. The issue is whether the violation of the Act is of sufficient gravity that the present criminal proceeding must be dismissed.

■ The court finds that it is not. A judgment rendered in violation of the Act is merely voidable, rather than void, and does not violate due process. *Sarfaty v. Sarfaty,* 534 F.Supp. 701 (E.D.Pa.1982); *Davidson v. General Finance Corp.,* 295 F.Supp. 878 (N.D.Ga.1968); *Ostrowski v. Pethick,* 404 Pa.Super. 392, 590 A.2d 1290 (1991). Under 50 App.U.S.C. § 520(4), a person affected by the Act has 90 days after the end of his service to have the judgment set aside. Even if the judgment failed to comply with the requirement of the Act, the judgment is valid if the affected serviceman fails to have the judgment vacated pursuant to subsection (4). *Rentfrow v. Wilson,* 213 A.2d 295 (D.C.App.1965); *Krumme v. Krumme,* 6 Kan.App.2d 939, 636 P.2d 814 (1981).

■ There is no indication here that Hampshire ever attempted to have the award of support set aside within the appropriate time. That a judgment in violation of the various provisions of 50 App.U.S.C. § 520 is voidable, rather than void, is a reflection of the fact that those protections are not mandated by constitutional guarantees but by specific legislation adopted by Congress. As noted earlier, Hampshire has never articulated any specific procedure adopted by the Kansas court in rendering the decree which violated due process. Hampshire has failed to prove that he was unable to challenge the decree directly, unable to appeal it, or unable to have it subsequently set aside pursuant to various statutory provisions. He has not cited to any authority holding that the state is constitutionally obliged to provide a prisoner with an attorney to handle his interests in private civil litigation with other persons, upon matters unrelated to the cause or conditions of his confinement. Finally, the court would note that in addition to the provisions for voiding a default judgment under the Soldiers and Sailors Relief Act, K.S.A. 60–255(b) allows Kansas courts to set aside prior default judgments for good cause.

Because Hampshire has failed to show that he was actually prevented from exercising his due process right in connection with the divorce decree, the rule announced in *Mendoza–Lopez* is not applicable here. That rule prohibited a criminal prosecution predicated upon an earlier administrative decision which was rendered without due process. With the technical and statutory violation of the Soldiers and Sailors Relief Act aside, Hampshire has not shown that the support judgment was rendered without due process. Because the underlying support decree did not violate any constitutional protection, the present criminal proceeding cannot be dismissed on the grounds sought.

IT IS ACCORDINGLY ORDERED this 13th day of June, 1995, that the defendant's motion to dismiss information (Dkt. No. 16) and his motion to dismiss information charging violation of statute unconstitutionally enacted or alternatively requesting the court to abstain (Dkt. No. 14) are hereby denied.