**UNITED STATES of America**

v.

**James Dennis MURPHY, Jr.**

**Crim. No. 94–0551C–01.**

United States District Court,
W.D. Virginia,
Roanoke Division.

July 18, 1995.

Julie Campbell, Asst. U.S. Atty., Roanoke, VA, for U.S.

William Cleaveland, Roanoke, VA, for defendant.

### Memorandum Opinion

CONRAD, United States Magistrate Judge.

This action is before the court upon defendant James Murphy's challenge to the constitutionality of the statute under which he was charged. Substantially relying on *United States v. Lopez*, 514 U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), defendant first argues that Congress exceeded its authority to legislate under the commerce clause of Article I, § 8, cl. 3, when it enacted 18 U.S.C. § 228 ("the Child Support Recovery Act"). Defendant also argues that the Child Support Recovery Act violates the *ex post facto* clause in Article I of the Constitution.

On May 22, 1995, defendant was tried on one count of a two count information charging him with violating 18 U.S.C. § 228 on separate occasions. Testimony at trial revealed that from on or about January 1, 1993, until on or about June 30, 1993, defendant had been employed as a dog trainer/groomer in Lee, Florida, but had failed to make past due child support payments to Lynda T. Murphy for support of their daughter, Erin, who resided in Virginia during that time period. The court determined that this evidence supported a finding of guilt beyond a reasonable doubt. However, the court delayed entering the conviction until it could rule on the constitutionality of the Child Support Recovery Act.

### Commerce clause

■ In *Lopez, supra, citing Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Supreme Court identified three broad areas appropriate for federal legislation under the commerce clause: the channels of interstate commerce; the instrumentalities of, or persons or things in, interstate commerce; and those activities having a substantial effect on interstate commerce.[1] Of these three categories, *Lopez* primarily dealt with the third. Confronted

1. The Court cited the following cases as additional support for this interpretation of commerce clause jurisprudence: *United States v. Darby*, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609 (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Shreveport Rate Cases* 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914); *Southern R. Co. v. United States*, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72 (1911); *NLRB v. Jones & Laughlin Steel*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). *Lopez*, 514 U.S. at ——, 115 S.Ct. at 1628, 131 L.Ed.2d at 635.

with a challenge to the constitutionality of 18 U.S.C. § 922(q)(1)(A), the Gun–Free School Zones Act of 1990, the Court concluded that the Act could not be sustained as a regulation of an activity that substantially affected interstate commerce. 514 U.S. at ——, 115 S.Ct. at 1629–34, 131 L.Ed.2d at 642–43. Specifically, the Court noted that § 922(q) had "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at ——, 115 S.Ct. at 1631, 131 L.Ed.2d at 639. The Court found that, absent some such jurisdictional element, the relationship between interstate commerce and any firearm in the possession of a high school student was too tenuous to justify Congress' intrusion into a criminal matter of primarily local concern. *Id.*

Defendant argues that, pursuant to the reasoning in *Lopez*, § 228 must likewise be found unconstitutional. The court disagrees. Unlike § 922(q), § 228 does have a jurisdictional element that ensures it will not intrude upon matters with no relation to interstate commerce. Section 228 provides, in pertinent part, that "[w]hoever willfully fails to pay a past due support obligation with respect to a child who resides in another State" shall be guilty under this statute. In order to be convicted under the Act, therefore, an individual must not only be outside of the immediate control of the state in which his dependent child resides, but he must also be under an obligation to transfer funds from one state to another. In *Lopez*, there was no such assurance that the interests of residents in different states would come into play before the federal statute could be invoked; nor was there an implicit prerequisite that a monetary transaction take place across state lines, as is the case here. Particularly when one takes into account the fact that, in order to come under the purview of § 228, the accused will often have taken advantage of employment opportunities in the state in which he lives, there can be little argument that a requirement that he provide money to a child in another state has a substantial effect on interstate commerce.

Furthermore, federal courts have consistently upheld statutes analogous to § 228 as constitutional. Under 18 U.S.C. § 1073, an individual may be federally prosecuted for fleeing a state to avoid prosecution or a legal compulsion to testify. Under 18 U.S.C. § 1201, whoever willfully transports an abductee across state lines may be held criminally liable. Courts addressing the constitutionality of these acts have acknowledged Congress' power under the commerce clause to criminalize activity involving interstate travel. *See Simmons v. Zerbst*, 18 F.Supp. 929 (D.Ga.1937) (withdrawal by Congress of facilities of interstate commerce from escaping criminals was an appropriate means to a proper end); *United States v. Miller*, 17 F.Supp. 65 (D.Ky.1936) ([§ 1073] is a proper exercise of Congress' power to regulate "interstate commerce); *United States v. Toledo*, 985 F.2d 1462 (10th Cir.1993) (transportation of unwilling abductee across state lines is a misuse of interstate commerce sufficient to confer federal jurisdiction under the commerce clause). In fact, the *Lopez* court itself affirmed that Congress has the authority "to keep the channels of interstate commerce free from immoral or injurious uses." 514 U.S. at ——, 115 S.Ct. at 1629, 131 L.Ed.2d at 637, *citing Heart of Atlanta Motel, supra* (quoting *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

The underlying policy considerations of § 228 also appear to be similar to the those underlying §§ 1073 and § 1201. All three acts seem to be aimed at preventing an individual from escaping either law enforcement officers or his own legal obligations by taking advantage of our federal system of government through flight to another state. Although, under the wording of § 228, the custodial parent could conceivably be the cause of the child's separation from the delinquent parent, thereby significantly reducing the voluntariness of the offender's submission to federal jurisdiction, defendant does not fall into this category of offenders. The evidence at trial showed that defendant moved to Florida from Texas without first notifying either the mother of his child or the local child support agency. While in Florida, defendant gained employment but failed to make any child support payments. The ease

with which he was able to avoid making such payments clearly stems in large part from his flight to another state. It could not have escaped him that he might involve the interests of more than one state, if not the federal government, through his use, and abuse, of the channels of interstate commerce.

Under the circumstances presented by this case, therefore, the court concludes that the *Lopez* decision is inapposite. *See United States v. Hampshire*, 892 F.Supp. 1327 (D.Kan. 1995). The Court in *Lopez* was clearly concerned only with Congress' intrusion into the arena of *intrastate* activity. While it may be true that "family law" has long been considered as coming under the purview of state law, *Lopez* does not prohibit Congress from enacting laws aimed at regulating the use of interstate travel as a means by which to avoid the legal obligations arising from family responsibilities.

*Ex Post Facto* clause

Defendant next argues that 18 U.S.C. § 228, as applied to him, violates the *ex post facto* clause of the Constitution. In support of this argument, he asserts that, although he owed child support in the amount of $5099.49 on October 26, 1992, when § 228 was passed, he did not accumulate an arrearage sufficient to meet the jurisdictional prerequisite of $5000 from the date of the act's passage until the termination date in the information, which is June 30, 1993. He maintains, therefore, that he is being criminally punished for conduct which occurred prior to the change in the law.

■ The *ex post facto* clause prohibits legislatures from retroactively altering the definition of crimes or increasing punishment for criminal acts. *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). However, the *ex post facto* clause does not prohibit legislatures from regulating present conduct by the enactment of criminal laws. *See generally Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

■ In the instant case, defendant found himself in the unfortunate position of owing $5099.49 when the Child Support Recovery Act was passed. While it may be true that he acquired this debt through his failure to pay his support obligations from sometime in 1991 until the passage of the act, he has not been criminally charged for his acts of omission during that time period. Instead, defendant has been charged with willfully failing "to pay a past due support obligation" during the first six months of 1993.

Upon the enactment of § 228, defendant was put on notice that he would be held criminally liable if he did not make the child support payments then owing. Nevertheless, defendant persisted in completely ignoring his obligation to pay child support. The court is of the opinion that the *ex post facto* clause does not prohibit punishment of defendant for these later acts of omission. Although defendant's actions prior to the enactment of § 228 clearly brought him within the scope of the act, he is being punished solely for conduct which occurred once he was on notice that such conduct exposed him to criminal liability under a federal statute.

For reasons stated, defendant's motion to dismiss his conviction as unconstitutional shall be denied. A judgment of conviction shall be entered reflecting the adjudication of defendant's guilt for a single offense under 18 U.S.C. § 228.