**UNITED STATES of America, Plaintiff,**

**v.**

**Billy Ray SIMS, Defendant.**

**95–CR–125–H.**

United States District Court,
N.D. Oklahoma.

Feb. 22, 1996.

Ann Dooley, United States Attorney, Tulsa, OK, Stephen J. Knorr, Federal Public Defender's Office, Tulsa, OK, for defendant.

James L. Swartz, United States Attorney, Tulsa, OK, for U.S.

### ORDER

HOLMES, District Judge.

This matter comes before the Court on the Motion to Dismiss the Information by Defendant Sims pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure. On September 29, 1995, Mr. Sims was charged by information with one count of failure to pay a child support obligation in violation of 18 U.S.C. § 228. On October 5, 1995, Mr. Sims first appeared before the Court and entered a plea of not guilty to the charged offense.

The information alleges that Mr. Sims, a Texas resident, failed to provide child support to Vicky R. Smith, a resident of Osage County, Oklahoma, for the benefit of a minor child fathered by Mr. Sims with Ms. Smith. The minor child in question was born when Defendant Sims was a student at the University of Oklahoma during the period from 1975 through 1979. For a number of years, Mr. Sims provided support to the child; his contributions ceased in November, 1990. Ms. Smith and her child, who is now 17 years of age, have resided in Oklahoma continuously since the child's birth. The Government does not allege that Mr. Sims fled the jurisdiction to avoid child support. Rather, Defendant's violation of 18 U.S.C. § 228 is premised upon the fact that Mr. Sims does not reside in the same state as the minor child, his support obligation has been unpaid for more than one year, and is of an amount greater than $5,000.00.

In his Motion, Mr. Sims argues that the Child Support Recovery Act, 18 U.S.C. § 228 (the "CSRA"), violates the Commerce Clause of the Constitution of the United States; that the CSRA has been unconstitutionally applied to the instant case; that the CSRA violates the Tenth Amendment of the United States Constitution; and that principles of federalism and comity mandate dismissal.

■ If the information is insufficient to charge an offense, this Court may dismiss it. See United States v. King, 581 F.2d 800, 802 (10th Cir.1978). Defendant's principal argument in support of his position is that, based upon the reasoning set forth in the recent decision of the United States Supreme Court in United States v. Lopez, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the CSRA is unconstitutional under

the Commerce Clause or, alternatively, has been unconstitutionally applied to him. The *Lopez* Court invalidated a provision of the 1990 Gun–Free School Zones Act, 18 U.S.C. § 922(q), that made it a federal crime to possess a firearm within 1,000 feet of school grounds. In *Lopez,* the Court recognized three broad categories of activity that Congress may regulate pursuant to the Commerce Clause: (1) the use of the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities that have "a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Under the third category, the Supreme Court held that Section 922(q) did not regulate an activity that substantially affected interstate commerce; therefore, Section 922(q) violated the Commerce Clause. Central to the Court's determination was Section 922(q)'s lack of an "express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1631.

Neither the Supreme Court nor the United States Court of Appeals for the Tenth Circuit have determined the constitutionality of the CSRA. But at least nine district courts have reviewed the constitutionality of the CSRA in light of *Lopez,* and the decisions of the courts are split as to the CSRA's constitutionality under the Commerce Clause. *See United States v. Wilson,* No. 4:95MG3026 (N.D.Ohio, Nov. 7, 1995) (slip op.) (upholding the CSRA); *United States v. Parker,* 911 F.Supp. 830 (E.D.Pa.1995) (finding the CSRA unconstitutional); *United States v. Bailey,* 902 F.Supp. 727 (W.D.Tex.1995) (finding the CSRA unconstitutional); *United States v. Sage,* 906 F.Supp. 84 (D.Conn.1995) (upholding the CSRA); *United States v. Hopper,* 899 F.Supp. 389 (S.D.Ind.1995) (upholding the CSRA); *United States v. Mussari,* 894 F.Supp. 1360 (D.Ariz.1995) (striking

down the CSRA); *United States v. Schroeder,* 894 F.Supp. 360 (D.Ariz.1995) (companion case to *Mussari* ) (finding the CSRA unconstitutional); *United States v. Murphy,* 893 F.Supp. 614 (W.D.Va.1995) (upholding the CSRA); *United States v. Hampshire,* 892 F.Supp. 1327 (D.Kan.1995) (upholding the CSRA).

██ The role of a court is to interpret the law as written. It is improper for a court to impose its view of public policy in the face of a statute duly passed by the elected representatives of the people of the United States. Of course, an unconstitutional statute must not be upheld. However, a court must be circumspect in finding a statute constitutionally infirm. Indeed, it is a form of inappropriate judicial activism to overturn a duly enacted law as unconstitutional unless, under clear principles set forth by the Supreme Court, the law must be struck down as unconstitutional. *Cf. Hampshire,* 892 F.Supp. at 1331 ("It is not for this court to address the wisdom or folly of Congress in adopting the CSRA.... a statute's dubious grounding in public policy is not a basis for a finding of unconstitutionality."). The Court concludes that *Lopez* does not mandate a finding that the CSRA was enacted in violation of the Commerce Clause.

██ First, unlike Section 922(q), the CSRA does contain a jurisdictional element which ensures its applicability only to an individual who is "outside of the immediate control of the state in which his dependent child resides" and who is also "under an obligation to transfer funds from one state to another." *Murphy,* 893 F.Supp. at 616. Second, this Court agrees with the district courts upholding the CSRA that "the payments regulated by the CSRA have a substantial effect on the national economy." *Sage,* 906 F.Supp. at 89; *Hopper,* 899 F.Supp. at 392 ("... the act of collecting an obligation, though dealing with an intangible, does amount to commerce."); *Wilson,* slip op. at 7 ("When a parent fails to make a support payment, that parent has received an economic gain and the custodial parent

has suffered an undeniable economic loss. Repeated thousands of times, the economic effects are profound."). This Court thus adopts the reasoning of the *Wilson, Sage, Hopper, Murphy,* and *Hampshire* courts and joins these courts in holding that the CSRA was not enacted in violation of the Commerce Clause.

▪ Neither does this Court believe that the CSRA is unconstitutional as applied to Mr. Sims. Defendant argues that the intent of Congress in passing the CSRA was to "impose a criminal penalty for flight to avoid payment of arrearages in child support...," *Mussari,* 894 F.Supp. at 1364, but that "Congress unartfully and wrongfully spelled out this intent by simply requiring that the non-paying parent reside in a state different than that of the child." Defendant does not dispute that there is no language in the statute requiring that the offender has fled the state where the minor child resides to avoid his or her child support obligation. This Court refuses to second-guess the intent of Congress where clear and unambiguous statutory language is applicable to the Defendant. Although the Government has not asserted that Mr. Sims fled Oklahoma to avoid paying his child support obligation, there is no dispute that Mr. Sims was residing in Texas and that his minor child, to whom he allegedly failed to pay child support, resides in Oklahoma. Thus, the circumstances of the alleged offense meet the explicit requirements of the CSRA, which statute the Court has already determined does not violate the Commerce Clause. Therefore, the CSRA has not been unconstitutionally applied to Defendant Sims.

▪ Defendant's argument that the CSRA violates the reservation of powers to the states under the Tenth Amendment is equally unavailing. "The CSRA creates criminal sanctions for individuals who fail to comply with child support obligations; it makes no attempt to regulate the conduct of the states, as states. It is regulation of purely private conduct, and does not represent a violation of the Tenth Amendment." (citations omitted).

*Hampshire,* 892 F.Supp. at 1330; *accord Sage,* 906 F.Supp. at 92 ("Congress ... can criminalize conduct outlawed by states without violating the Tenth Amendment."); *Hopper,* 899 F.Supp. at 393 ("Because this Court concludes that Congress was acting within the scope of the powers granted to it under the Commerce Clause, the Tenth Amendment's proscription against federal legislation in areas reserved to the states does not apply."); *Wilson,* slip op. at 10 n. 8 (same). For the reasons enumerated above by the *Hampshire, Sage, Hopper,* and *Wilson* courts, the Court holds that the CSRA does not violate the Tenth Amendment.

▪ Mr. Sims' final argument in support of his motion is that principles of federalism and comity mandate dismissal. Addressing that argument, the *Hopper* court stated that, "[w]hile principles of federalism and comity do suggest that federal courts should generally not interfere with state criminal prosecutions, and other state law functions, this Court can find no case where those 'principles' were held to be grounds to declare an act of Congress unconstitutional." 899 F.Supp. at 393. This Court agrees with the *Hopper* court that principles of federalism and comity neither mandate nor allow the Court to conclude that the CSRA is unconstitutional.

In conclusion, the Court denies Defendant's Motion to Dismiss the Information (Docket # 8).

IT IS SO ORDERED.