**UNITED STATES of America**

**v.**

**Gary Nelson JOHNSON**

**Criminal No. 95–365–M.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 13, 1996.

Dale Warren Dover, Alexandria, VA, for Gary Nelson Johnson, defendant.

Michael Francis Ruggio, U.S. Attorney's Office, Alexandria, VA, for the U.S.

## MEMORANDUM OPINION

SEWELL, United States Magistrate Judge.

Following a bench trial, Gary Nelson Johnson was found guilty of a violation of the Child Support Recovery Act, 18 U.S.C. § 228 (the "CSRA"). Johnson moved to dismiss on the grounds that the CSRA, 18 U.S.C. § 228, is an unconstitutional exercise of Congressional power under the commerce clause of the Constitution and that prosecution also violates the Tenth Amendment of the Constitution. For the reasons stated from the bench on February 6, 1996 and stated herein, the Motion to Dismiss is DENIED.

## I. FACTS

The evidence at trial established that Johnson was married to Mary F. Rauss (formerly Johnson) on May 25, 1985 in Endicuit, New York. Marisa Rose Johnson was born of the marriage on August 18, 1988. Mary F. Johnson separated from Defendant, assumed custody of Marisa, and has at all times since her separation from Defendant resided with Marisa in Virginia. The Circuit Court of Prince William County, Virginia issued a final decree of divorce to Defendant and Mary F. Johnson on October 6, 1989. The divorce decree ordered Defendant to pay to Mary Johnson the sum of twenty-five (25.00) dollars per week for the support of Marisa. Defendant resided in Broome County, New York, and based on the Virginia decree, the Family Court of the State of New York, Broome County, ordered Defendant to pay twenty-five (25.00) dollars per week for

support of Marisa. The New York Family Court was unsuccessful in obtaining compliance with its Order. The Family Court issued Orders of Contempt against Johnson on May 26, 1989, December 26, 1989, March 20, 1990, June 27, 1990, September 26, 1990, and on May 14, 1991. On September 16, 1991, the Family Court in New York issued a warrant for the arrest of Johnson. Johnson remained a fugitive until being arrested in Florida on June 20, 1995 by FBI agents on the federal CSRA charges.[1]

Johnson failed to file federal income tax returns in 1990, 1991, and 1994. While in Florida, however, Johnson remarried, began working and earning money, and between him and his second wife, owned substantial assets of value. Nevertheless, throughout this period, Johnson failed to make child support payments for Marisa. Only two or three child support payments were ever made by Johnson to the custodial parent. At no point did Johnson contact the Family Court in New York or his ex-wife regarding the large arrearage. Johnson's intent to delay the state court orders is manifested, in part, by letters he wrote to Marisa's mother. For example, one excerpt in a letter Johnson wrote to Marisa's mother, postmarked February 16, 1989, states:

> If you persist [in seeking child support], I'll do whatever is necessary to continue on my present directive. Even if it means moving from Bing[hampton] N.Y. so nobody knows where the hell I am. I've already explained to you that I cannot pay you anything right now. Whatever money I do make in the summer goes towards *my* financial needs throughout the school year. I'm sorry but you are not going to alter that, I don't care what the law is.

## II. DISCUSSION

In his motion to dismiss, Johnson contends that the CSRA, 18 U.S.C. § 228, is an unconstitutional exercise of Congressional power and that his prosecution violates the Tenth Amendment of the Constitution.

1. As a condition of release in this proceeding under the CSRA, Defendant was ordered to ap-

*(A) The Commerce Clause and the CSRA*

The CSRA makes it a federal crime to "willfully [fail] to pay a past due support obligation with respect to a child who resides in another State." 18 U.S.C. § 228. The Act was signed into law on October 25, 1992. It specifically provides:

> § 228. **Failure to pay legal child support obligations**
>
> **(a) Offense.** Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).
>
> **(b) Punishment.** The punishment for an offense under this section is—
>
> (1) in the case of a first offense under this section, a fine under this title, imprisonment for not more than 6 months, or both; and
>
> (2) in any other case, a fine under this title, imprisonment for not more than two years, or both.
>
> **(c) Restitution.** Upon a conviction under this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing.
>
> **(d) Definitions.** As used in this section—
>
> (1) the term "past due support obligation" means any amount—
>
> (A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and
>
> (B) that has remained unpaid for a period longer than one year, or is greater than $5,000; . . .

The Commerce Clause of the Constitution provides Congress the power "[t]o regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes." U.S. Const., Art. I, § 8, cl. 3.

pear in Broome County, New York in response to the pending arrest warrant.

Johnson claims that Congress exceeded the limits of its authority under the Commerce Clause by enacting the CSRA. He argues that the statute fails to regulate a commercial activity and does not contain a requirement that the proscribed activity be connected in any way to interstate commerce. Johnson relies principally on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *United States v. Mussari*, 894 F.Supp. 1360 (D.Ariz.1995). *Lopez* is the most recent Supreme Court case dealing with Congress' legislative powers under the Commerce Clause. *Mussari* is one of the three district court opinions which have held that Congress exceeded its power under the Commerce Clause in enacting the CSRA.[2]

*Lopez* provides the current starting point for analyzing an issue concerning the breadth of Congressional power under the Commerce Clause. In *Lopez*, the Supreme Court found the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q), unconstitutional. The statute in *Lopez* made it a federal crime to knowingly possess a firearm within 1,000 feet of a school zone. The Court described the three areas which Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce.... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce.

*Lopez*, —— U.S. at —— – ——, 115 S.Ct. at 1629–30 (citations omitted).

In determining whether the Gun–Free School Zones Act was passed within Congress' powers under the Commerce Clause, the Court concerned itself with only the third category. The Court held that the statute exceeded Congress' Commerce Clause powers because it did not regulate conduct that "substantially affects" interstate commerce. The decision was predicated upon finding the Gun–Free Schools Act to be a criminal statute having nothing to do with commerce and lacking a jurisdictional element that required a nexus between the proscribed activity and interstate commerce. *Id.* at —— – ——, 115 S.Ct. at 1630–31. In its reasoning, the Court noted that the "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at ——, 115 S.Ct. at 1634. Applying the *Lopez* reasoning, the CSRA clearly is a constitutional exercise of Congress' Commerce Clause powers. The CSRA is distinguishable from the statute at issue in *Lopez*.

In a number of well-reasoned post-*Lopez* opinions, district courts have held the CSRA to be a constitutional exercise of Congress' powers under the Commerce Clause. *See United States v. Hopper*, 899 F.Supp. 389 (S.D.Ind.1995); *United States v. Sage*, 906 F.Supp. 84 (D.Conn.1995); *United States v. Wilson*, NO. 4:95MG3026 (N.D.Ohio Nov. 7, 1995); *United States v. Murphy*, 893 F.Supp. 614 (W.D.Va.1995); *United States v. Hampshire*, 892 F.Supp. 1327 (D.Kan.1995); *United States v. Kegel*, 916 F.Supp. 1233 (M.D.Fla.1996). I concur with the results of these decisions and find that the CSRA falls within the second or third category of Congress' Commerce Clause powers as set forth in *Lopez*. A child support payment between persons residing in different states reasonably can be considered a "thing in interstate commerce" as well as conduct with a "substantial effect" on interstate commerce.

First, unlike the Gun–Free School Zones Act at issue in *Lopez*, the CSRA has a jurisdictional prerequisite requiring a nexus between the proscribed activity and interstate commerce. *See Murphy*, 893 F.Supp. at 616; *Hampshire*, 892 F.Supp. at 1329; *Wilson,* NO. 4:95MG3026 at 5; *Sage*, 906 F.Supp. at 89; *Hopper*, 899 F.Supp. at 391. An individ-

---

**2.** *United States v. Parker,* 911 F.Supp. 830 (E.D.Pa.1995), and *United States v. Bailey,* 902 F.Supp. 727 (W.D.Tex.1995), are the other two district court decisions that have held the CSRA to be unconstitutional.

ual violates the CSRA by failing to pay a child support obligation with respect to a child who resides in *another state.* The CSRA's legislative history provides that the Act "is designed to target interstate cases only." H.R.Rep. No. 771, 102nd Cong., 2nd Sess.1992. The defaulting parent must live in a state different than that of the child being supported. Thus, the CSRA imposes criminal liability only after a defendant failed to transfer funds from one state to another. The CSRA was an attempt by Congress to address the problem of interstate enforcement of child support by "taking the incentive out of moving interstate to avoid payment." *Id.* This differs from the Gun–Free School Zones Act invalidated in *Lopez,* which did not have a jurisdictional prerequisite linked to interstate commerce. Criminal liability existed under the Gun–Free School Zones Act for possessing a firearm within 1,000 feet of a school zone, a purely intrastate activity. There was no requirement in *Lopez* that a defendant have recently moved in interstate commerce or that possession of the firearm be connected to interstate commerce.

Second, unlike the Gun–Free School Zones Act found unconstitutional in *Lopez,* the CSRA involves an economic activity. The Gun–Free School Zones Act was mainly concerned with the safety of schools, but the CSRA focuses on economic matters. The CSRA concerns the payment (or non-payment) of money across state lines for the support of children. The non-payment of money due, or a debt, is in a very real sense an economic activity, as the parent who fails to make a support payment realizes an economic gain and the custodial parent and offspring often suffer a painful economic loss. *See Sage,* 906 F.Supp. at 89 (1995); *Wilson,* NO. 4:95MG3026 at 6–7. If repeated many times over, non-payment of child support in violation of court orders, unlike intrastate possession of a gun as in *Lopez,* does have a substantial effect on interstate commerce. *Id.* at 7. The non-payment of past due child support reduces the custodial parent's and child's consumption of goods in interstate commerce. *See Sage,* 906 F.Supp. at 90.

Additionally, the non-payment of child support creates an economic problem on a national scale. In enacting the CSRA, the House of Representatives noted that there is a deficit of over five billion dollars per year in unpaid child support obligations. H.R.Rep. No. 771, 102d Cong., 2d Sess. at 6 (1992). Without payment of such child support, many custodial parents and their children often cannot obtain adequate housing, food, clothing, medical care, and other goods and services. This leads to poverty, homelessness, poor health, and a burden on the federal treasury. *Id.* at 5–6. As then-President George Bush stated when he signed the CSRA into law, the non-payment of legally imposed child support obligations "forces innocent and blameless families onto welfare rolls" and other public programs, including Aid to Families with Dependent Children. Statement by President George Bush Upon Signing S. 1002, 28 Weekly Comp.Pres.Doc. 2122 (Oct. 25, 1992).

Johnson, understandably, relies upon the *Mussari* decision in support of his argument that the CSRA is unconstitutional. As the Arizona District Court noted, decisions of other jurisdictions have no binding authority upon this Court. Accordingly, I respectfully decline to follow *Mussari.* The *Mussari* court seems distracted that the CSRA lacks specific language requiring an interstate element in relation to the prosecution of the *Defendant* under the CSRA. In addition, the *Mussari* court seemed concerned that the residences in different states required by the CSRA can be created, and in at least one case cited by *Mussari* (Hopper) was created, by a party other than the Defendant. The assessment of criminal liability in the CSRA is based upon interstate non-payment of an obligation, not the movement of the Defendant. Although *Mussari* refers to the residence in different states as a "diversity" requirement, it is axiomatic that the movement (or non-movement) of support payments between different states must be interstate activity. I respectfully disagree with the conclusions in *Mussari* as to whether or not non-payment of child support obligations between parties in different states bears a substantial relation to interstate commerce for the reasons articulated herein.

Whether or not the Congress of the United States *should* legislate in the area of child support is not the appropriate inquiry for this Court.

*(B) The Tenth Amendment and the CSRA*

■ The Tenth Amendment of the Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively." U.S. Const. amend. X. Johnson claims that the CSRA violates the Tenth Amendment because it exceeds those powers given to Congress by the Constitution. Johnson argues that enforcement of the CSRA in the case at bar would preempt Virginia's regulation of an activity primarily reserved for the states, presumably the regulation of criminal law and/or family law. Johnson relies on the *Mussari* decision, which held that the CSRA violated the Tenth Amendment because Congress did not enact the statute pursuant to any of its specifically enumerated powers. The *Mussari* court specifically ruled out the possibility that the CSRA was enacted within Congress' authority under the Commerce Clause.

The CSRA does not violate the 10th Amendment. A number of district courts have already reached such a conclusion. *See Hampshire*, 892 F.Supp. at 1330; *Sage*, 906 F.Supp. at 92; *Hopper*, 899 F.Supp. at 394. As noted by the *Hampshire* court, "[t]he CSRA creates criminal sanctions for individuals who fail to comply with child support obligations; it makes no attempt to regulate the conduct of states, as states. It is regulation of purely private conduct and does not violate the 10th Amendment." *Hampshire*, 892 F.Supp. at 1330. In other words, Virginia, New York, and Florida are left free to exercise their police powers and regulate criminal activity and family activity. The CSRA does not intrude into matters of family law and criminal law where all parties reside within a particular state. The CSRA simply supplements whatever mechanism the States already have in place to enforce the collection of child support by tackling the very troublesome area of interstate child support obligations. *See Wilson*, NO. 4:95MG3026 at 9.

As noted in *Sage*, Congress can criminalize activity prohibited by states without violating the Tenth Amendment. 906 F.Supp. at 92 (citing *U.S. v. Bishop*, 66 F.3d 569, 578 (3d Cir.1995) (finding statute regulating car jacking to be constitutional on grounds that carjacking is a national problem with a substantial impact on interstate commerce)). Criminal law and family law are areas traditionally within the purview of States, but the Tenth Amendment does not bar Congress from proscribing the use of interstate commerce for avoidance of child support obligations. As a result, Johnson's challenge of the CSRA as a violation of the Tenth Amendment has been rendered moot by this Court's conclusion that Congress enacted the statute within the limits of its Commerce Clause powers.

## III.   CONCLUSION

■ Great weight is afforded to decisions of Congress. *See Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 2771–72, 65 L.Ed.2d 902 (1980). Accordingly, courts must defer to Congressional determinations that the regulated activity substantially affects interstate commerce if there exists any rational basis for such a finding. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). Johnson has neither satisfied his burden of rebutting the presumption of constitutionality, nor shown there to be no rational basis to conclude that the non-payment of child support is substantially related to interstate commerce.

This Court concludes that Congress' enacting of the CSRA was a valid exercise of its powers under the Commerce Clause. The statute does not violate the Tenth Amendment of the Constitution and the principles of federalism and comity do not warrant a ruling that the CSRA is unconstitutional.