

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-1997

# United States v. Parker

Precedential or Non-Precedential:

Docket 95-201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Parker" (1997). *1997 Decisions.* Paper 53.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/53

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-2018
_____

UNITED STATES OF AMERICA,
            Appellant

vs.

STEVEN PAUL PARKER

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-cr-00352)

_____

Argued
February 6, 1997
Before:  STAPLETON and MANSMANN, Circuit Judges
and RESTANI, Judge.*

(Filed March 7, 1997)
_____

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney
Chief of Appeals
Linda Dale Hoffa
Assistant United States Attorney
Robert A. Zauzmer (Argued)
Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

        Counsel for Appellant


Steven A. Feldman, Esquire (Argued)
Feldman & Feldman
1200 Veterans Memorial Highway
Hauppauge, NY  11788

        Counsel for Appellee

*       Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

———————

OPINION OF THE COURT

———————

MANSMANN, <u>Circuit</u> <u>Judge</u>.

This appeal from the dismissal of a criminal information for failure to pay past-due child support presents a question of first impression for us.  We must determine whether enactment of the Child Support Recovery Act of 1992, 18 U.S.C. § 228 (1995) ("The Act") was within the power granted to Congress under Article 1, Section 8, Clause 3 of the Constitution.  Because we are convinced that the Act was the product of a lawful exercise of congressional power under the Commerce Clause and does not transgress the Tenth Amendment, we find that the district court erred in holding the Act unconstitutional.  We will, therefore, reverse the order of the district court.

I.

On June 27, 1995, the United States Attorney for the Eastern District of Pennsylvania filed a criminal information alleging that Steven Paul Parker, a Florida resident, willfully failed to pay a past-due child support obligation to his two children in Pennsylvania in violation of the Child Support Recovery Act of 1992, 18 U.S.C. § 228.[1]

————————————————

1.       The Act provides in part, as follows:

(a) Offense --  Whoever willfully fails to pay a past due support
        obligation with respect to a child who resides in

2

On September 14, 1995, Parker moved to dismiss the information, alleging that the Act is constitutionally infirm in that it: (1) falls outside the limits of the power granted to Congress under the terms of the Commerce Clause; and (2) impermissibly interferes with the states' ability to regulate child support and criminal law, thereby undermining the doctrine of federalism and violating the Tenth Amendment. In an opinion and order entered on October 30, 1995, the district court agreed

(..continued)
          another state shall be punished as provided in
          subsection (b).

(b) Punishment -- The punishment for an offense under this
          section is --

(1) in the case of a first offense under this section, a fine
          under this title, imprisonment for not more than 6
          months, or both; and

(2) in any other case, a fine under this title, imprisonment for
          not more than 2 years, or both.

(c)  Restitution -- Upon a conviction under this section, the
          court shall order restitution . . . in an amount equal
          to the past due support obligation as it exists at the
          time of sentencing.

(d)  Definitions -- As used in this section --

(1)  The term "past due support obligation" means any amount --

     (A) determined under a court order or an order of an
              administrative process pursuant to the law of a
              State to be due from a person for the support and
              maintenance of a child or of a child and the
              parent with whom the child is living; and

     (B) that has remained unpaid for a period longer than one
              year, or is greater than $5,000.

28 U.S.C. § 228.

3

with Parker's arguments and dismissed the information.  This timely appeal followed.

We have jurisdiction pursuant to 18 U.S.C. § 3731.  Our review of the district court's determination that the Act is unconstitutional is plenary.  United States v. Rybar, 103 F.3d 273 (3d Cir. 1996).

II.

Section 8 of Article I of the Constitution of the United States provides that "The Congress shall have power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes. . . ."  The scope of congressional power under this section has, until recently, been interpreted to be virtually limitless.  The Commerce Clause landscape changed, however, with the Supreme Court's decision in United States v. Lopez, ___ U.S. ___, 115 S. Ct. 1624 (1995).  There, the Court for the first time in nearly sixty years invalidated a statute as beyond the scope of the Commerce Clause.  This apparent change in course has resulted in reexamination of the Commerce Clause in a variety of contexts, as litigants attempt to persuade the courts that Lopez has breathed new life into statutory challenges that would, in other times, have been rejected summarily.

In Lopez, the Court considered the constitutionality of the Gun Free School Zones Act of 1990.  This Act made it a

4

federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(1)(A). Evaluating the constitutionality of the statute, the Court established that there are "three broad categories of activity that Congress may regulate under its commerce power." 115 S. Ct. at 1629. Congress is authorized to "regulate the use of the channels of interstate commerce", "regulate and protect the instrumentalities of interstate commerce," and "regulate . . . those activities that substantially affect interstate commerce." Id.

Because the Gun Free School Zone Act did not involve "channels" or "instrumentalities" of interstate commerce, the Court focused exclusively upon whether the regulated activity substantially affected interstate commerce. The Court concluded that it did not, writing that the statute "by its terms has nothing to do with `commerce' or any sort of economic enterprise, however broadly one might define those terms." Id. at 1630. The Court also found it significant that the statute did not contain a jurisdictional element establishing a connection to interstate commerce and that "[neither] the statute nor its legislative history contained express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." Id. at 1631.

5

Relying primarily on Lopez, the district court held the Child Support Recovery Act unconstitutional, rejecting the government's argument that the Act regulates an activity that substantially affects interstate commerce and comprises a use of the channels of interstate commerce. Specifically the court concluded that a willful failure to pay a court-ordered sum "has simply nothing to do with commerce in the context of the limited power given to the federal government and withheld from the states in the Commerce Clause." United States v. Parker, 911 F. Supp. 830, 834 (E.D. Pa. 1995). The court also held that the Act did not regulate use of the channels of interstate commerce in that it did not apply to "the shipping of goods or the movement of persons in interstate commerce." Id. at 842. While we recognize that the Supreme Court's decision in Lopez establishes that there is, indeed, an outer limit to congressional authority under the Commerce Clause, we do not agree with the district court that enactment of the Child Support Recovery Act lies beyond that limit.

In United States v. Bishop, 66 F.3d 569, 577 (3d Cir. 1995), a post-Lopez decision, we defined our mandate in cases challenging congressional authority under the Commerce Clause as follows: "Our job . . . is not to second-guess the legislative judgment of Congress that [the regulated activity] substantially affects interstate commerce, but rather to ensure that Congress had a rational basis for that conclusion." We clarified that the

6

requisite rational basis may be supported by an Act's legislative history and by the interstate elements of a crime. We also adopted a broad definition of commerce, rejecting the notion that the Supreme Court in Lopez created a bright line rule establishing that unless an activity is commercial or economic it is beyond the reach of Congress under the Commerce Clause. Even "local activities may become the subject of national legislation when they are found to be part of a national problem with a substantial impact upon interstate commerce." Id. at 584.

In light of both the decision in Lopez and our own precedent, we are convinced that the Child Support Recovery Act falls within the scope of congressional authority under the Commerce Clause as a valid regulation of activity having a substantial effect upon interstate commerce. In so holding we align with our sister courts of appeals which have evaluated and rejected constitutional challenges to the Act. See United States v. Hampshire, 95 F.3d 787 (10th Cir. 1996); United States v. Mussari, 95 F.3d 999 (9th Cir. 1996); and United States v. Sage, 92 F.3d 101 (2d Cir. 1996).[2] We find the reasoning articulated

---

2.    A majority of the district courts outside the Second, Ninth, and Tenth Circuits which have considered challenges to the Child Support Recovery Act have upheld the Act's constitutionality. See United States v. Johnson, 940 F. Supp 911 (E.D. Va. 1996); United States v. Sims, 936 F. Supp. 817 (N.D. Okla. 1996); United States v. Lewis, 936 F. Supp. 1093 (D. R.I. 1996); United States v. Ganapowski, 930 F. Supp. 1076 (M.D. Pa. 1996); United States v. Kegel, 916 F. Supp. 1233 (M.D. Fla. 1996); United States v. Bongiorno, Crim. No. 94-10178-REK, 1996 WL 208508 (D. Mass. Jan. 25, 1996); United States v. Hopper, 899 F. Supp. 389 (S.D. Ind. 1995); United States v. Murphy, 893 F.

7

in these decisions to be persuasive and adopt it here. Accordingly our analysis is brief.

As we noted in Bishop, "we . . . must give substantial deference to a Congressional determination that it had the power to enact particular legislation." 66 F.3d at 576. Several factors convince us that the Child Support Recovery Act falls within the line drawn by the Supreme Court in Lopez. First, by its terms, the Act is confined to interstate transactions; it addresses the obligation of one parent to make payments in interstate commerce for a child living in a different state. These payments will normally move in interstate commerce by mail, by wire, or by electronic transfer.

The activity regulated by the Act falls within the broad definition of commerce which we adopted in Bishop. Failure to make required payments gives rise to a debt which implicates economic activity. This is an instance where "local activities . . . are . . . part of a national problem with a substantial impact upon interstate commerce." Id. at 584. It is significant that the legislative history underlying the Act establishes that state efforts have been inadequate to ensure that payments owed are actually made and that, as a result, annual obligations covered by the Act total billions of dollars. Finally, unlike the statute the Court reviewed in Lopez, the Child Support

(..continued)
Supp. 614 (W.D. Va. 1995). But see United States v. Bailey, 902 F. Supp. 727 (W.D. Tex. 1995) (holding Act unconstitutional).

8

Recovery Act involves an unbroken chain of interstate events which begins when one parent crosses state lines and ends with interstate collection efforts.

## III.

We also reject Parker's argument that the Child Support Recovery Act undermines the doctrine of federalism and violates the Tenth Amendment. In light of our holding that the Act is the product of a legitimate exercise of congressional authority under the Commerce Clause, this argument fails. "If Congress acts under one of its enumerated powers -- here its power under the Commerce Clause -- there can be no violation of the Tenth Amendment." United States v. Mussari, 95 F.3d at 791. The Act does not "threaten[] the existence or significance of the states or interfere[] with the existence of their powers." United States v. Sage, 92 F.3d at 106. "All the Act does is enable the United States to help [the states] do what [they] could not do on [their] own, namely enforce [the] obligation to send money from one state to another." Id. at 105.

## IV.

Because we are convinced that the Child Support Recovery Act was enacted pursuant to the authority granted to Congress under Article 1, Section 8, Clause 3 of the Constitution

9

and does not violate the terms of the Tenth Amendment, we will reverse the order of the district court.

_____

TO THE CLERK:

    Please file the foregoing opinion.

                      _____
                             Circuit Judge