**UNITED STATES of America, Plaintiff,**

v.

**Allan A. MUSSARI, Defendant.**

**No. CR 95–009 PHX PGR.**

United States District Court,
D. Arizona.

Oct. 25, 1995.

Michael Joseph Bidwill, Asst. U.S. Attorney, Phoenix, AZ, for plaintiff.

David Lee Titterington, Asst. Fed. Public Defender, Phoenix, AZ, for defendant.

## ORDER

ROSENBLATT, District Judge.

Pending before the court is Plaintiff's Motion for Reconsideration ("Motion") of this court's Order dated July 27, 1995 ("Order"), in which the court granted Defendant's Motion to Dismiss indictment based upon a finding that the Child Support Recovery Act of 1992 ("CSRA"), 18 U.S.C. § 228, the basis for the indictment, was unconstitutional. *See* Order, Doc. # 40. On August 30, 1995, this court ordered Defendant to file a response to the Plaintiff's Motion. The court having been fully briefed on the pending motion, it will issue its decision.

### A. Standard

█ A party seeking a motion for reconsideration must (1) demonstrate some valid reason why the court should reconsider its prior ruling and (2) set forth substantial facts or law to persuade the court to reverse its prior decision. *Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965, 967 (D.Ariz.1992). Plaintiff has failed to provide a valid reason why this court should reconsider its prior ruling, nor has it provided substantial law or facts to persuade this court to reverse its decision.

. . . .

### B. Discussion

#### 1. Contrary law

█ Before undertaking an analysis of Plaintiff's arguments contained in its Motion, the court will discuss cases Plaintiff cites, as well as cases this court has discovered, from other jurisdictions which have held the CSRA constitutional. Although the decisions of these other jurisdictions have no binding authority upon this court, these decisions will be addressed in order to show that this court's finding that the CSRA is unconstitutional is correct.

First, Plaintiff has filed a Notice of Supplemental Authority wherein it cites to a decision out of the Southern District of Indiana which holds the CSRA constitutional. This decision, *United States v. Hopper*, 899 F.Supp. 389 (S.D.Ind.1995), specifically distinguishes this court's Order in its determination that Congress had the authority under the Commerce Clause to enact the CSRA.

In *Hopper*, Magistrate Judge Hussmann found that because the CSRA contains the requirement that the defendant and his/her child live in different states, there is a sufficient showing of "interstate commerce" under the Commerce Clause. Magistrate Judge Hussmann further found that the "act of collecting an obligation, though dealing with an intangible, does amount to commerce." *See Hopper*, 899 F.Supp. at 392 (S.D.Ind.1995). This court will address why it believes these two findings to be erroneous in relation to Plaintiff's arguments, *infra*. However, further analysis of the *Hopper* decision provides the most compelling basis for finding the CSRA unconstitutional.

Even after concluding that the CSRA is constitutional, Magistrate Judge Hussmann makes the following conclusion:

> The Court does note that several interesting issues remain to be resolved in this case. It appears that the CSRA was aimed at providing a tool for enforcement authorities to prosecute "runaway" parents who flee a jurisdiction to avoid state enforcement of child support obligations. It appears that *Mr. Hopper has never left Indiana, and has never been outside the jurisdiction of the Indiana courts which presumptively have ample power to both bring him into compliance, and to punish him criminally for willful failure to support his child.*

*See Hopper*, 899 F.Supp. at 394 (S.D.Ind. 1995) (emphasis added). Apparently in the *Hopper* case, the custodial parent moved out of the state with the child, and defendant Hopper never left the jurisdiction of the state court which issued the child support order.

This set of facts is more than just an "interesting issue"; it goes to the heart of the constitutionality of the CSRA. The only movement in "interstate commerce" undertaken in the *Hopper* case was by a third party, i.e. the custodial parent. Thus, the *Hopper* court has found *federal* jurisdiction over a party who has *not* moved or engaged in interstate commerce; the basis for jurisdiction is the action of a third party. Clearly under the circumstances of the *Hopper* case, there has been no use of the channels of interstate commerce, nor has there been any activity which substantially affects interstate commerce. Without either of these bases, there is no authority for Congress to enact a federal criminal statute under the Commerce Clause.

This is the major stumbling block to the CSRA. The courts which have found the CSRA constitutional do so with limited, if any, discussion of the above scenario, which obviously is a reality, specifically in the *Hopper* case. These courts are caught up in the analysis of the policy behind the CSRA; the

obvious lack of specific language requiring an interstate element, in relation to the defendants being prosecuted under the CSRA, which would allow Congress to enact such legislation is overlooked. Allowing Congress to enact *any* legislation it desires in the name of the Commerce Clause is *exactly* what the United States Supreme Court intended to remedy in the *United States v. Lopez*[1] decision. No longer will the *Wickard v. Filburn*[2] rationale be good enough to allow Congress to regulate any area of an individual's life. Without the specific limitations of requiring the defendant to be the party to move interstate, the CSRA fails to pass muster under the Commerce Clause and is unconstitutional.

Further, the *Hopper* court acknowledges that the state has ample power to punish Mr. Hopper for his failure to pay child support. Indeed, no one argues in any of the decisions which have addressed the constitutionality of the CSRA that the state is not fit to punish those individuals who remain wholly within the jurisdiction of the state, i.e. those parents who live in the same state as their children. However, in the scenario presented by the facts of the *Hopper* case, the federal government would be stepping into a purely *intrastate* matter, i.e. the prosecution of an individual who has not availed himself of the channels of interstate commerce, in order to enforce a *state* court order of child support. Clearly the Commerce Clause did not anticipate such far-reaching actions on the part of the federal government when enacting federal criminal legislation.

Therefore, the *Hopper* case does not aid Plaintiff in persuading this court that the CSRA is constitutional; in fact, it only further supports this court's finding that the CSRA is *un*constitutional.

■ The next case Plaintiff cites as supporting its claims that the CSRA is constitutional is the case of *United States v. Hampshire*, 892 F.Supp. 1327 (D.Kan.1995). In *Hampshire*, the United States District Court for the District of Kansas found that the CSRA was constitutional because it had the explicit requirement that the parent and child live in different states, creating the necessary interstate nexus for application under the Commerce Clause.[3] *See* 892 F.Supp. at 1329–30.

This court respectfully disagrees with the analysis undertaken by the District Court in the *Hampshire* case. As this court has stated in its original Order, as well as in this order, the interstate "nexus" contained in the CSRA does not meet the requirements necessary to establish constitutionality under the Commerce Clause. Therefore, this court finds that the *Hampshire* decision is unpersuasive as to the constitutionality of the CSRA.

The court has found another decision by the United States District Court for the Western District of Virginia, *United States v. Murphy*, 893 F.Supp. 614 (D.Va.1995), which holds the CSRA constitutional. Although neither party has brought this case to the attention of the court, the court will address this case.

In *Murphy*, Magistrate Judge Conrad found that the CSRA had the necessary interstate nexus to constitute regulation of matters purely in interstate commerce. In support of this finding, Magistrate Judge Conrad cites to federal statutes which criminalize fleeing a state to avoid prosecution or to avoid a legal compulsion to testify (18 U.S.C. § 1073) and which criminalize the willful transportation of an abductee across state lines (18 U.S.C. § 1201). *See Murphy*, 893 F.Supp. at 616. Magistrate Judge Conrad found these statutes to be analogous to the CSRA; because those federal statutes were constitutional, the CSRA, because it criminalizes the fleeing of a state to avoid

1. — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

2. 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

3. The *Hampshire* court also addressed other arguments raised by the defendant, including a Tenth Amendment challenge and the "domestic relations" exception to federal diversity jurisdiction. However, because that court did not rely upon these arguments when determining the CSRA was constitutional, this Court will not address these subsidiary arguments in the context of the *Hampshire* decision.

paying child support, was likewise constitutional.

. . . .

However, the *Murphy* decision fails to acknowledge that the CSRA *does not criminalize the willful fleeing of a state to avoid paying child support.* Although one may conclude from the legislative history of the CSRA that Congress wanted to prosecute those individuals who did flee a state in order to avoid paying child support, that is not what Congress actually did in enacting the CSRA. There is no requirement in the CSRA that the parent failing to pay the child support be the parent to move out of state— if the custodial parent takes the child out of the state, there can still be a prosecution under the CSRA if there is a failure to pay child support.

Indeed, Magistrate Judge Conrad refers to the above scenario in the *Murphy* decision, but distinguishes that situation from the facts of *Murphy* in order to avoid addressing the constitutionality of that precise scenario:

> Although, under the wording of § 228 [the CSRA], the custodial parent could conceivably be the cause of the child's separation from the delinquent parent, *thereby significantly reducing the voluntariness of the offender's submission to federal jurisdiction,* defendant does not fall into this category of offenders.

*Murphy,* 893 F.Supp. at 616 (emphasis added).

Thus, the *Murphy* court avoids dealing with the precise constitutional issue regarding a federal court's jurisdiction in the absence of interstate activity by distinguishing the case on the facts. However, as discussed *supra,* in relation to the *Hopper* case, the issue of the lack of any requirement in the CSRA for the non-paying parent to flee the jurisdiction is exactly what makes the CSRA unconstitutional.

Therefore, with all due respect to those jurisdictions which have held the CSRA constitutional, this court must follow the mandates of the Commerce Clause and the *Lopez* decision, and find that the CSRA fails to provide the specific language which would allow Congress to enact legislation of this type. Accordingly, this court's original decision finding the CSRA unconstitutional remains in effect.

### 2. Arguments by Plaintiff for reconsideration of Order

#### a. Misapplication of *Lopez*

■ Under the *United States v. Lopez,* — U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) decision, upon which this court based in part its decision finding the CSRA unconstitutional, the United States Supreme Court analyzed the constitutionality of the Gun–Free School Zones Act based upon Congress' power under the Commerce Clause. In so doing, the Supreme Court identified three categories of activity which may be regulated by Congress under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. See, *e.g., Darby* [*United States v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941) ], 312 U.S., at 114 [61 S.Ct. at 457]; *Heart of Atlanta Motel* [*v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) ], *supra,* at 256 [85 S.Ct. at 356–57] (" '[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question.' ") (quoting *Caminetti v. United States,* 242 U.S. 470, 491 [37 S.Ct. 192, 197 61 L.Ed. 442] (1917)). Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. See, *e.g., Shreveport Rate Cases,* 234 U.S. 342 [34 S.Ct. 833, 58 L.Ed. 1341] (1914); *Southern R. Co. v. United States,* 222 U.S. 20 [32 S.Ct. 2, 56 L.Ed. 72] (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); *Perez* [*v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) ], *supra,* at 150 [91 S.Ct. at 1359] ("[F]or example, the destruction of an aircraft (18 U.S.C. § 32), or . . . thefts from interstate shipments (18 U.S.C. § 659)"). Finally, Congress' commerce authority includes the

power to regulate those activities having a substantial relation to interstate commerce, [*N.L.R.B. v.*] *Jones & Laughlin Steel*, 301 U.S. [1] at 37 [57 S.Ct. 615, at 624, 81 L.Ed. 893] *i.e.,* those activities that substantially affect interstate commerce. *Wirtz* [*Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) ], *supra,* at 196, n. 27 [88 S.Ct. at 2024, n. 27.] *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1629–30.

■ Plaintiff contends that this court erred in analyzing the constitutionality of the CSRA under the third category of activity, i.e. activities that substantially affect interstate commerce. In fact, Plaintiff concedes that the affecting commerce test "has no application here." *See* Motion, pg. 3.[4] Instead, Plaintiff contends the court should have analyzed the authority of Congress to enact the CSRA based upon the first category of activity, use of the channels of interstate commerce.

In its Motion, Plaintiff first claims that the payment of child support across state lines constitutes "commerce" and also constitutes the use of a channel of interstate commerce. Plaintiff also states that the because Defendant lives in Illinois while his children live in Arizona, and because the Maricopa County Superior Court sent a wage withholding order to Defendant's employer in Illinois, this additionally supports a finding that the channels of interstate commerce were utilized, and therefore the CSRA is a constitutional exercise of Congressional power under the Commerce Clause.

Plaintiff's argument is not clear. The court assumes Plaintiff is contending that the use of the United States' mail to make the child support payments and to serve the wage withholding order constitutes the use of interstate channels, and that Defendant's move out of state also constitutes the use of interstate channels. Neither argument is persuasive. Initially, it should be noted that there is no requirement in the CSRA that any child support payment or wage withhold-

ing order actually be served via the United States' mail system. Arguably, these documents could be delivered without any interaction with the United States' mail system.

Further, as in the *Hopper* case, if a defendant who did not move out of the state were forced to use the mails via the unilateral acts of a third party, i.e. the custodial parent moving out of state, there would be problems with invoking jurisdiction over this individual, as stated *supra.*

Additionally, although the United States' mail system can potentially be a channel of interstate use, it can equally be a channel of *intra* state use. Certainly two persons within the same state can mail items to each other without their mail ever leaving the state; no argument could be made in that example that the channels of *inter* state use were utilized. That is certainly the case in this matter. Plaintiff contends that the Arizona court has served a wage withholding order on Defendant's employer in Illinois. Therefore, not only is Defendant *not* utilizing the United States' mail system to send support payments, as the payments are being automatically withheld from his pay, but the wage withholding order was issued by and placed into the United States' mail by the Arizona court, a third party. Defendant has not utilized any channel of interstate commerce via the United States' mail system.

A clarification should be made at this point. By noting that the use of the United States' mail is insufficient to establish the requisite interstate commerce necessary to establish Congressional authority under the Commerce Clause to enact the CSRA, the court is not suggesting that the use of the United States' mail system alone is *never* sufficient to establish the requisite interstate commerce necessary for federal legislation.

For example, under 18 U.S.C. § 1341, the federal mail fraud statute, it is a federal offense to utilize the United States' mail system to perpetrate fraudulent schemes. Under this statute, the use of the United States' mail system, regardless of whether

---

4. As Plaintiff concedes that the third category of analysis does not apply here, and because Plaintiff has failed to object to the analysis undertaken by this Court in relation to the third category of analysis, the Court finds that Plaintiff concedes the analysis by this Court in relation to the third category of analysis, i.e. substantially affecting commerce, is correct.

the mail travels interstate, is a crime. This statute has been held to be constitutional. *See Parr v. U.S.*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); *U.S. v. States*, 488 F.2d 761 (8th Cir.), *cert. denied*, 417 U.S. 909, 950, 94 S.Ct. 2605, 3078, 41 L.Ed.2d 212, 671 (1973).

. . . .

However, this statute is easily distinguishable from the CSRA. The mail fraud statute requires the use of the United States' mail as an element of the offense; the CSRA does not require the use of the United States' mail system. Plaintiff has *inferred* that the CSRA has such a requirement; however, this court cannot rely upon inferences in determining whether Congress has provided the necessary authority under the Commerce Clause under which it may enact criminal legislation. Under the CSRA, it is clearly the movement of either the parent or child to another state which Congress is relying upon in order to show the requisite interstate commerce.

Therefore, it is apparent that the use of the United States' mail alone is insufficient to establish the requisite use of interstate channels of commerce necessary for Commerce Clause authority under the CSRA. This is especially true considering that the use of the United States' mail system is not an element of the offense under the CSRA [5], and considering the facts of this case where the Defendant has not utilized any channel of interstate commerce via the United States' mail system.

■ The true focal point to establish interstate commerce is clearly the requirement that the parent and child live in different states, as the CSRA does. However, an exception to the use of diversity to confer jurisdiction upon a federal court has been carved out in the area of domestic relations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *McIntyre v. McIntyre*, 771 F.2d 1316 (9th Cir.1985). "[T]he domestic relations exception . . . divests the federal courts of power

to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 703, 112 S.Ct. at 2215.

■ Although the CSRA does not explicitly require a federal court to issue divorce, alimony or child custody decrees, it does force a federal court to interpret, and possibly modify, state court ordered child custody decrees. In order for a prosecution under the CSRA to commence, there must be a "past due support obligation", defined as any amount

(A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and

(B) that has remained unpaid for a period longer than one year, or is greater than $5,000;

\* \* \* \* \* \*

*See* 18 U.S.C. § 228(d)(1)(A), (B). Clearly there must be a state court order or an administrative process order which requires the defendant to pay child support, and of course the failure to so pay the support, prior to the prosecution of a defendant under the CSRA.

Therefore, an element of the offense requires the federal courts to examine state court orders of support. Of course, if the defendant did not object to the state court's order, there arguably could be no problem with such examination. However, in the event the defendant challenged the validity of the state court order requiring support, the federal court would either be forced to a) stay the pending federal criminal litigation to allow the challenge to the order to be brought in the state court; or b) modify or reinterpret the state court order. Alternative b) is precluded by the domestic relations exception to federal diversity jurisdiction, as discussed *supra*. Alternative a) certainly is viable; however, as discussed by this court in its original Order, if the state court is going to address the dispute regarding the suffi-

---

5. Additionally, it should be noted that the CSRA is a criminal statute which punishes the *failure* to pay child support; obviously, a defendant is *not* utilizing the mail systems in order to be subject to prosecution.

ciency of the support order, certainly it would be the proper forum to enforce the support order.

. . . .

Thus, the use of federal diversity jurisdiction to confer an interstate element under the CSRA is insufficient to show interstate commerce under the Commerce Clause. Furthermore, as discussed *supra,* the CSRA fails to require the defendant prosecuted under the CSRA to be the person who is involved in interstate commerce. Therefore, the CSRA fails to establish the requisite interstate commerce necessary to find the CSRA constitutional.

b. Regulation of non-commercial activity

Plaintiff next contends that because Congress can regulate the non-commercial use of the channels of interstate commerce, it is really irrelevant whether the exchange of money and/or the movement of Defendant and state court orders constitutes "commerce". Plaintiff cites to several cases which it claims support a finding that the CSRA, even if non-commercial in nature, is constitutional under the use of interstate channels analysis.

However, these cases cited by Plaintiff are easily distinguishable from this case. Each of the statutes passed in order to combat the various "evils", as perceived by Congress, contained the specific language holding that the activity must have been in *interstate* commerce. *See Hoke v. United States,* 227 U.S. 308, 317–18, 33 S.Ct. 281, 282, 57 L.Ed. 523 (1913) (text of Mann Act states: "That any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, *in interstate or foreign commerce,* ... any woman or girl for the purpose of prostitution....") (emphasis added); *Brooks v. United States,* 267 U.S. 432, 435, 45 S.Ct. 345, 345, 69 L.Ed. 699 (1925) (the National Motor Vehicle Theft Act states: "An act to punish the transportation of stolen motor vehicles *in interstate or foreign commerce.*") (emphasis added); *United States v. Orito,* 413 U.S. 139, 140 fn. 1, 93 S.Ct. 2674, 2676 fn. 1, 37 L.Ed.2d 513 (1973) (18 U.S.C. § 1462 states: "Whoever brings into the United States, or any place subject to the jurisdic-

tion thereof, or knowingly uses any express company or other common carrier, for carriage *in interstate or foreign commerce....*") (emphasis added); *United States v. Hill,* 248 U.S. 420, 422, 39 S.Ct. 143, 144, 63 L.Ed. 337 (1919) (the Reed Amendment states: "Whoever shall order, purchase, or cause intoxicating liquors to be transported in *interstate commerce....*") (emphasis added); *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 534, 64 S.Ct. 1162, 1164, 88 L.Ed. 1440 (1944) (relevant portions of Sherman Act state: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of *trade or commerce among the several States, or with foreign nations* .....") (emphasis added).

These statutes not only involved non-commercial activity which could be considered commerce; these statutes required the activity to be *interstate.* As stated *supra,* the failure of the CSRA to contain an interstate element results in its unconstitutionality. Simply because the payment (or non-payment) of child support may constitute "commerce" does not end the constitutional inquiry.

c. Attempts to distinguish Order

Finally, Plaintiff undertakes a one paragraph attempt to address other concerns raised by this court in its Order. However, Plaintiff does not present any arguments which would warrant this court to reconsider its analysis, nor does Plaintiff provide any law which requires this court to overturn its Order. Further, as stated *supra,* Plaintiff concedes that the "substantially affecting commerce" category does not apply to the CSRA. As Plaintiff does not quarrel with this court's analysis of the CSRA under the "affecting commerce" test, and because Plaintiff concedes that the "affecting commerce" category has no application in this case, the court has no need to reexamine its original Order. Plaintiff's Motion in actuality is more of request for this court to analyze the facts of this case under a different prong of the Commerce Clause; it is not a request to reexamine its findings under the original analysis.

Although Plaintiff vociferously contends that the "affecting commerce" category of activities which may be regulated by Congress pursuant to the Commerce Clause does not apply in this matter, it cites to a report issued by the General Accounting Office as evidence that the CSRA *does* substantially affect interstate commerce. *See* Motion, Exhibit B. However, the information contained in this report is no different than the information originally submitted by Plaintiff in opposition to Defendant's Motion to Dismiss the Indictment. As the court has already addressed this argument of Plaintiff in its Order, the court will not revisit this issue on its merits.

However, herein lies the fallacy of Plaintiff's arguments regarding the constitutionality of the CSRA. Plaintiff's arguments are essentially policy arguments to persuade this court to read into the CSRA the pieces Congress omitted which confer upon Congress the authority to enact the CSRA in the first place. Were this court to find that Congress can pass criminal legislation in every instance where a citizen exercised his or her constitutional right to travel to a new state to live, Congress would essentially have unlimited, unchecked authority to legislate as to *any* area of an individual's life.

In the *Lopez* decision, the policy of not allowing guns within 1000 feet of a school was a desirable policy, just as not allowing parents who fail to pay child support to flee a jurisdiction to avoid prosecution is a desirable policy. But just as the United States Supreme Court found that having a desirable policy behind a statute is insufficient to cure the constitutional defects of the Gun–Free School Zones Act, this court must find that the policy of preventing "deadbeat" parents from avoiding prosecution cannot cure the constitutional defects in the CSRA. Good intentions cannot, and must not, be the controlling factors in determining whether Congress has the constitutional authority to regulate the lives of the individual citizens of the United States. Congress must abide by the limitations of the Constitution and only pass legislation which is constitutionally permissible. The CSRA fails to comply with this requirement.

*C. Conclusion*

In order for this court to grant Plaintiff's Motion, Plaintiff must demonstrate some valid reason why the court should reconsider its prior ruling and set forth substantial facts or law to persuade the court to reverse its prior decision. Plaintiff has failed to establish either requirement.

Regardless of which category one analyzes the CSRA under in relation to those activities which Congress has the power to regulate under the Commerce Clause, the CSRA is unconstitutional. Plaintiff concedes that the "substantially affecting commerce" test does not come into play in this matter; however, this court's analysis, as stated in its original Order, clearly establishes that the CSRA does not substantially affect commerce, and thus cannot be constitutional under that category.

Analysis under the first category, i.e. the use of the channels of interstate commerce, only further supports this court's finding that the CSRA is unconstitutional, as stated *supra*. And as no one contends, as they surely could not, that the CSRA somehow is an exercise of Congressional power under the second category, i.e. the instrumentalities of interstate commerce, the CSRA fails to encompass any area of activity which may be regulated by Congress under the Commerce Clause. Thus, this court's original finding that the CSRA is unconstitutional is correct under *any* analysis of the Commerce Clause powers of Congress.

. . . .

.    .    .    .    .

In accordance with the foregoing,

IT IS ORDERED denying Plaintiff's Motion for Reconsideration [Doc. # 41].