UNITED STATES of America,
Plaintiff–Appellant,

v.

Allan A. MUSSARI, Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Donald W. SCHROEDER,
Defendant–Appellee.

Nos. 95–10479, 95–10513.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1996.

Decided Sept. 5, 1996.

Michael Bidwill, Assistant United States Attorney, Phoenix, AZ; David S. Kris, United States Department of Justice, Washington, D.C., for plaintiff-appellant.

David Lee Titterington, Sigmond G. Popko, Assistant Federal Public Defenders, Phoenix, AZ, for defendants-appellees.

Before: JOHN T. NOONAN, Jr. and THOMPSON, Circuit Judges, HAGEN,* District Judge.

NOONAN, Circuit Judge:

The United States appeals the dismissal of indictments charging Donald W. Schroeder and Allan A. Mussari with violations of the Child Support Recovery Act of 1992, 18 U.S.C. § 228 (the CSRA). The cases, which have been consolidated on this appeal, present the question of whether Congress has power under the Commerce Clause to enact the statute. In thoughtful opinions the district court held that it did not. We come to the contrary conclusion and accordingly reverse and remand.

## THE STATUTE

The text of the Child Support Recovery Act of 1992 states:

(a) Offense.—Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).

(b) Punishment.—The punishment for an offense under this section is—

(1) in the case of a first offense under this section, a fine under this title, im-

prisonment for not more than 6 months, or both; and

(2) in any other case, a fine under this title, imprisonment for not more than 2 years, or both.

(c) Restitution.—Upon a conviction under this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing.

(d) Definitions.—As used in this section—

(1) the term "past due support obligation" means any amount—

(A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and

(B) that has remained unpaid for a period longer than one year, or is greater than $5,000; and

(2) the term "State" includes the District of Columbia, and any other possession or territory of the United States.

18 U.S.C. § 228.

## PROCEEDINGS

On January 11, 1995 Mussari was indicted on the charge that from November 1, 1988 to the present, "while residing in a different state," he, "with respect to his two children who reside in the State and District of Arizona, willfully and unlawfully failed to pay a past due support obligation as ordered by the Maricopa County Superior Court, State of Arizona, which obligation is greater than $5,000.00 and has remained unpaid for more than one year," in violation of 18 U.S.C. § 228. On the same date Donald Schroeder was charged in the same fashion with respect to his four children who reside in Arizona while he resided "in a different state" and had allegedly failed since February 1, 1992 to pay support obligations as ordered by the Maricopa County Superior Court.

* The Honorable David Warner Hagen, United States District Judge for the District of Nevada, sitting by designation.

Mussari and Schroeder moved to dismiss the indictments. After briefing, the district court on July 26, 1995 granted the motions. Its analysis was as follows: The court presumed that a statute enacted by Congress is constitutional. The court applied the criteria set out in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) to determine whether Congress had power under the Commerce Clause to enact this statute. The court held that criminalization of the failure to pay child support does not qualify as the regulation of the use of the channels of interstate commerce, nor does it qualify as the regulation of the instrumentalities of interstate commerce. If the CSRA were to be upheld it would have to be as a regulation of activities having 'a substantial relation to interstate commerce.' *United States v. Schroeder,* 894 F.Supp. 360, 364 (D.Ariz.1995); *United States v. Mussari,* 894 F.Supp. 1360, 1363 (D.Ariz.1995) (citing *Lopez,* —— U.S. at ——, 115 S.Ct. at 1630-31).

The court noted that the statute was criminal legislation in an area in which many states had already enacted criminal statutes to assure child support, but a number of states had not enacted criminal statutes. The court observed: "To allow Congress to pass a national criminal statute addressing this area would allow Congress to usurp the authority of those States which have chosen specifically not to criminalize failure to pay child support payments, for whatever reasons." 894 F.Supp. at 364; 894 F.Supp. at 1363. The court then addressed the government's argument that the CSRA was directed at parents who had deliberately moved interstate to avoid payment and the comment in the legislative history that the CSRA's purpose was to "impose a criminal penalty for flight to avoid payment of arrearages in child support...." H.R. Rep. 771, 102d Cong., 2d Sess. 1 (1992). The court observed the statute did not require flight or any intention to avoid payment, and it did not even require that the violator have moved into another state. 894 F.Supp. at 365; 894 F.Supp. at 1364.

The court then took note of the argument that the statute was in support of the federal government's program of Aid to Families

with Dependent Children (AFDC) since support money paid by parents was subtracted from grants made under the program. The court found the relationship between failure to pay support and AFDC did not provide a basis for criminal legislation under the Commerce Clause. 894 F.Supp. at 366-67; 894 F.Supp. at 1365-66.

The court further noted that "actual application of the CSRA would force federal courts to review and apply orders of state courts in violation of principles of federalism and comity." 894 F.Supp. at 368; 894 F.Supp. at 1367. A defendant being prosecuted under the CSRA could arguably defend the action by challenging the validity of the underlying state court support order. Either the federal court would be forced to review the support order or stay the federal pending criminal case while the support order was collaterally attacked in state court.

Finally, the court considered the defendants' objection that the CSRA violated the Tenth Amendment. The court held that, because Congress was exercising a power not enumerated in the Constitution, the CSRA was a violation of the Tenth Amendment. 894 F.Supp. at 368; 894 F.Supp. at 1367-68.

The United States moved for reconsideration. On October 25, 1995, the court denied the motion with an order reviewing the government's contentions. The court took into account the several decisions of district courts elsewhere in the country upholding the constitutionality of the Act and, in particular, noted *United States v. Hopper,* 899 F.Supp. 389 (S.D.Ind.1995). In *Hopper* the custodial parent and child had moved out of Indiana while the defendant remained in Indiana. The court indicated its disagreement with *Hopper* and took the case as illustrative of the constitutional defect of the CSRA in its application to a defendant who had not moved in interstate commerce.

The court also observed that the United States had conceded in its motion for reconsideration that the CSRA should not be analyzed as regulating an activity that substantially affects interstate commerce, observing that "Plaintiff vociferously contends that the 'affecting commerce' category of activities which may be regulated by Congress pursu-

ant to the Commerce Clause does not apply in this matter...." *United States v. Schroeder,* 912 F.Supp. 1240, 1247 (D.Ariz.1995); *United States v. Mussari,* 912 F.Supp. 1248, 1256 (D.Ariz.1995). Nonetheless, the court took note of a report issued by the General Accounting Office, cited by the government to show that the CSRA substantially did affect interstate commerce. The court found this evidence unpersuasive. The court commented: "The true focal point to establish interstate commerce is clearly the requirement that the parent and child live in different states, as the CSRA does. However, an exception to the use of diversity to confer jurisdiction upon a federal court has been carved out in the area of domestic relations." 912 F.Supp. at 1246; 912 F.Supp. at 1254 (citing *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) and *McIntyre v. McIntyre,* 771 F.2d 1316 (9th Cir.1985)). Finding no constitutional foundation for the congressional legislation, the court denied the motion for reconsideration.

The government appeals.

### ANALYSIS

Congress has the undisputed power "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1629. The obligation of a parent in one state to provide support for a child in a different state is an obligation to be met by a payment that will normally move in interstate commerce—by mail, by wire, or by the electronic transfer of funds. That obligation is, therefore, a thing in interstate commerce and falls within the power of Congress to regulate. The frustration of satisfaction of the obligation by the failure of the debtors to pay is an impediment to interstate commerce that Congress can criminalize as it has criminalized other impediments to interstate commerce. *E.g., Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

It is objected that the debtor himself is doing nothing in interstate commerce, that Congress can't make him use the mails or write a money order. The answer is short. Congress did not impose the underlying obligation to pay. With that obligation in existence, the difference in location of obligor and obligee requires that the satisfaction of the debt be through interstate means. The power of Congress is brought to bear on the things which now normally carry the character of an interstate transaction. Congress does not punish mere inaction. Congress has made criminal the conscious prevention of the movement of money or credit in interstate commerce in satisfaction of this class of obligations. The intentional refusal to satisfy the debt is as much an obstruction of commerce between the states as any act of extortion made unlawful by the Hobbs Act. *See e.g., United States v. Huynh,* 60 F.3d 1386, 1389 (9th Cir.1995).

It is objected that the debtor could satisfy the debt by driving to the child's home and delivering the money owed in person without any use of an interstate method of payment. Of course, the delinquent parent would himself have had to travel interstate. More fundamentally, the law can regulate what is the norm, not the exception. A delinquent dad—or mom—, who scorns a court order from another state, is not apt to be a person to deliver cash in person. If the debtor pays at all, it will be from a distance, a distance that must, in order to bring this statute into play, be set by residence in a state different from the child's.

It is objected that a court order to pay child support is not commerce, that it is regulation of a fundamental familial relation. True, the court order arises from the family relation. Once in place, the order creates a debt. Like any other debt, it is a thing of value, one of millions of obligations that make up the stream of commerce subject to congressional control.

It is objected that the statute could come into play by the child moving out of state rather than the parent doing so. This hypothetical will not support a facial challenge to the statute as it is applied in this case. But if the hypothetical is entertained, it constitutes no objection to the constitutionality of the statute. It doesn't matter whether the

interstate character of the transaction is created by the parent or the child. What matters is that an obligation, already imposed by state law, comes to wear an interstate face. Then, and only then, does the CSRA intervene and forbid frustration of the obligation's satisfaction.

It is objected that child support is peculiarly a matter within the competence of the states because support of one's children is a prime aspect of domestic relations. Undoubtedly such caution is appropriate for a federal court exercising jurisdiction based on diversity. *Ankenbrandt v. Richards,* 504 U.S. at 697, 112 S.Ct. at 2211–12. Here, however, we are not confronted by a case of jurisdiction based on diversity but with jurisdiction conferred by congressional employment of congressional power under the Commerce Clause. *Ankenbrandt* has no application. Respect for the competency of the states in matters of domestic relations is not disparaged but manifested when the states are confronted with interstate impediments to the fulfillment of domestic duties that the courts of the states have imposed, and the states find themselves, if not helpless, at least gravely impaired in pursuing the delinquent debts. *See* 138 Cong. Rec. H7324, H7326 (daily ed. Aug. 4, 1992) (Statement of Congressman Hyde); H.R.Rep. No. 771, 102d Cong., 2d Sess. 5 (1992); *cf.,* U.S. General Accounting Office, Fact Sheet for Congressional Requesters: Interstate Child Support—Mothers Report Receiving Less Support From Out–Of–State Fathers 3 (1992) (finding out-of-state fathers far more likely to fail to make child support payments than fathers who live in same state as child).

The district court thought that in the interest of federalism and comity Congress should not criminalize behavior that some states had left uncriminalized. Such a consideration may properly be taken into account by a legislature. There is no doubt that Congress, in furtherance of its control of an interstate activity, may criminalize what a state has left without criminal sanction, e.g., drug laws. *See e.g., United States v. Rosenberg,* 515 F.2d 190, 198 (9th Cir.1975). Comity may also, on occasion, indicate that a federal court enforcing the CSRA stay its hand until a state court has interpreted a support order. Such a possibility does not make the statute unconstitutional.

It was suggested by the district court that the CSRA trenched on the powers reserved by the Tenth Amendment. If, however, Congress acts under one of its enumerated powers—here its power under the Commerce Clause—there can be no violation of the Tenth Amendment. *New York v. United States,* 505 U.S. 144, 156, 112 S.Ct. 2408, 2417–18, 120 L.Ed.2d 120 (1992). Article I and the Tenth Amendment do not contradict but complement each other, fitting together like two concave surfaces to make a constitutional whole.

The district court carefully discharged its duty to examine the legislation challenged for its constitutional foundation and came to a conclusion that was neither hasty nor unreasonable. Benefitting from further briefing and the maturing of the arguments, we find the constitutional objections unavailing and are bolstered in our judgment by the convergence of our reasoning with that of the Second Circuit. *United States v. Sage,* 92 F.3d 101 (2d Cir.1996).

Accordingly, the judgments of the district court are REVERSED, and the cases REMANDED for trial.