PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 9/11/96**

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

No. 96-3007

RICKY L. HAMPSHIRE,

      Defendant-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-10026)

_____

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the brief), Wichita, Kansas, for Defendant-Appellant.

David S. Kris, United States Department of Justice, Washington, D.C. (Jackie N. Williams, United States Attorney, and Brian R. Johnson, Special Assistant United States Attorney, Wichita, Kansas), for Plaintiff-Appellee.

_____

Before KELLY, LOGAN and BRISCOE, Circuit Judges.

_____

KELLY, Circuit Judge.

_____

      Defendant-appellant Ricky L. Hampshire entered a conditional plea of guilty based

upon the failure to pay child support obligations in violation of the Child Support

Recovery Act of 1992 ("CSRA"), 18 U.S.C. § 228, after the district court rejected his challenges to the CSRA and its application. See United States v. Hampshire, 892 F. Supp 1327 (D. Kan. 1995). He was sentenced to two years' probation and ordered to pay $38,804 in restitution. He now challenges his conviction on the basis that (1) the CSRA violates the Commerce Clause and the Tenth Amendment; (2) the state court order upon which his federal conviction is predicated violates his rights under both the Fourteenth Amendment Due Process Clause and the Soldiers' and Sailors' Civil Relief Act ("SSCRA"); and (3) the order of restitution, which includes amounts of child support incurred prior to the enactment of the CSRA, violates the Ex Post Facto Clause. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and affirm.

Background

In September 1985, Defendant Ricky Hampshire went "absent without leave" ("AWOL") from the military. In October 1985, his wife filed for divorce in Kansas. In November 1985, Mr. Hampshire was apprehended, held in a civilian jail pending transfer to military custody, and served with a summons to answer the divorce petition. He never responded. The court granted the divorce, awarded custody to the mother of the couple's two children and ordered Mr. Hampshire to pay $350 per month in child support. After his release from military prison, Mr. Hampshire moved from Kansas to New Mexico, refused to make any payments and eventually was charged with violating the CSRA.

Discussion

I. Commerce Clause

We review de novo challenges to the constitutionality of a statute. United States v. Bolton, 68 F.3d 396, 398 (10th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996). The Commerce Clause provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States . . . ." U.S. Const. art. I, § 8, cl. 3. "A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." Federal Energy Regulatory Comm'n v. Mississippi, 456 U.S. 742, 754 (1982) (quoting Hodel v. Indiana, 452 U.S. 314, 323-24 (1981)).

The CSRA makes it a federal criminal offense for a person to "willfully fail[] to pay a past due support obligation with respect to a child who resides in another State." 18 U.S.C. § 228(a). "Past due support obligation" is defined as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child . . . that has remained unpaid for a period longer than one year, or is greater than $5,000." 18 U.S.C. § 228(d)(1).

The constitutionality of the CSRA presents a question of first impression in this circuit. The Commerce Clause empowers Congress to regulate three aspects of interstate

commerce: (1) "the use of the channels of interstate commerce[;]" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce[;]" and (3) activities that have a substantial relation to or substantially affect interstate commerce. United States v. Lopez, 115 S. Ct. 1624, 1629 (1995); see also Perez v. United States, 402 U.S. 146, 150 (1971). In Lopez, relied upon in large part by Mr. Hampshire, the Court struck down 18 U.S.C. § 922(q), part of the Gun-Free School Zones Act of 1990 ("GFSZA"), which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). In Lopez, the Court dismissed as inapplicable the first two categories of permissible interstate commerce regulation and held that § 922(q) failed to satisfy the prerequisites of the third category because it regulated an activity that did not "substantially affect[] interstate commerce." 115 S. Ct. at 1630-31. Of particular importance to the Court's analysis was the fact that § 922(q) was "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise" and "contain[ed] no jurisdictional element which would ensure . . . that the firearm possession in question affects interstate commerce." Id.

The Second Circuit recently held that the CSRA was a proper exercise of Congress's power to regulate and protect the instrumentalities of interstate commerce because the Act "regulates the flow of payments on unfulfilled child support orders where the child and parent reside in separate States." United States v. Sage, 1996 WL 450640,

*7 (2d Cir. 1996).  Because the CSRA "addresses an obligation to make payments in interstate commerce," it regulates more than local activity and is constitutional.  Id.  The Ninth Circuit also recently upheld the CSRA on a similar rationale:

> The obligation of a parent in one state to provide support for a child in a different state is an obligation to be met by a payment that will normally move in interstate commerce--by mail, by wire, or by the electronic transfer of funds.  That obligation is, therefore, a thing in interstate commerce and falls within the power of Congress to regulate.  The frustration of satisfaction of the obligation by the failure of the debtors to pay is an impediment to interstate commerce that Congress can criminalize...

United States v. Mussari, 1996 WL 499163, *3 (9th Cir. 1996).

Numerous district courts have addressed the constitutionality of the CSRA.  Several have found it to be constitutional.  See United States v. Ganaposki, 1996 WL 376351 (M.D. Pa. July 1, 1996); United States v. Nichols, 928 F. Supp. 302 (S.D.N.Y.1996); United States v. Collins, 921 F. Supp. 1028  (W.D.N.Y.1996) (opinion by magistrate judge); United  States v. Kegel, 916 F. Supp. 1233 (M.D. Fla.1996) (opinion by magistrate judge); United States v. Sage, 906 F. Supp. 84  (D. Conn.1995), aff'd, 1996 WL 450640 (2d Cir. 1996); United States v. Hopper, 899 F. Supp. 389  (S.D. Ind.1995) (opinion by magistrate judge); Hampshire, 892 F. Supp. 1327.  These courts generally upheld the constitutionality of the CSRA on the basis that (1) nonpayment of child support involves payment of a debt and therefore constitutes economic activity or commerce, Ganaposki, 1996 WL 376351, *7; Nichols, 928 F. Supp. at 310-11; (2) nonpayment of child support in the aggregate has a substantial impact on commerce,

Ganaposki, 1996 WL 376351, *7; Nichols, 928 F. Supp. at 311-12, Sage, 906 F. Supp. at 90; Hampshire, 892 F. Supp. at 1329-30; and (3) the CSRA's requirement that the delinquent parent and child reside in two different states constitutes the jurisdictional requirement of an interstate nexus ensuring that the federal government will not intrude upon matters with no relation to interstate commerce, Sage, 906 F. Supp. at 91-92; Hampshire, 892 F. Supp. at 1330.

By contrast, several other district courts have held the CSRA unconstitutional. See United States v. Parker, 911 F. Supp. 830 (E.D. Pa.1995); United States v. Bailey, 902 F. Supp. 727 (W.D. Tex.1995); United States v. Mussari, 894 F. Supp. 1360, reconsideration denied by, 912 F. Supp. 1248 (D. Ariz. 1995), rev'd, 1996 WL 499163 (9th Cir. 1996); United States v. Schroeder, 894 F. Supp. 360, reconsideration denied by, 912 F. Supp. 1240 (D. Ariz. 1995), rev'd, 1996 WL 499163 (9th Cir. 1996). These courts struck down the CSRA on the basis that (1) nonpayment of child support fails to constitute an activity that substantially affects commerce or bears a substantial relationship to commerce, Parker, 911 F. Supp. at 840-41; Schroeder, 894 F. Supp. at 365-66; Mussari, 912 F. Supp. at 1255-56; (2) the CSRA's requirement that the delinquent parent and child reside in two different states does not satisfy the constitutionally required jurisdictional requirement of an interstate nexus because the delinquent parent often does not involve himself in any interstate activity that constitutionally confers jurisdiction, Parker, 911 F. Supp. at 842-43; Mussari, 912 F.

Supp. at 1251-52; (3) nonpayment of child support inherently is a state criminal issue in which intervention by the federal government violates notions of comity and federalism, Bailey, 902 F. Supp. at 730; Schroeder, 894 F. Supp. at 367-68; and (4) the definitional requirements of the CSRA force federal courts to interpret and possibly modify state court ordered decrees, Schroeder, 912 F. Supp. at 1246; Mussari, 912 F. Supp. at 1254-55; Schroeder, 894 F. Supp. at 367-68.

In this case, Mr. Hampshire argues that Congress exceeded its authority under the Commerce Clause because the CSRA: (1) regulates an activity that neither constitutes nor involves commerce; (2) lacks the prerequisite interstate nexus sufficient to confer federal jurisdiction; (3) is overbroad; and (4) represents an unconstitutional foray by the federal government into domestic relations, a power traditionally reserved to states. The government responds that the CSRA: (1) regulates both the channels of interstate commerce as well as an economic activity bearing a substantial relation to interstate commerce, and (2) requires that the delinquent parent reside in a different state from the child, thus fulfilling the jurisdictional prerequisite of an interstate nexus. Because the CSRA regulates a court-ordered obligation to pay money in interstate commerce, and deals with an activity that is substantially related to and substantially affects interstate commerce, we conclude that Congress constitutionally exercised the power bestowed upon it by the Commerce Clause in enacting the CSRA.

Notwithstanding that state regulation is substantial or even predominant, it is well-

settled that Congress may regulate interstate aspects of economic transactions. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 551-52 (1944). We agree with the Second Circuit that "[i]f Congress can take measures under the Commerce Clause to foster potential interstate commerce, it surely has the power to prevent the frustration of an obligation to engage in interstate commerce." Sage, 1996 WL 450640, at *5 (2d Cir. 1996). Accord Mussari, 1996 WL 499163, at *3. Regarding the latter, the Court has invalidated application of state laws that prevented enforcement of contracts in interstate commerce. See Allenberg Cotton Co., Inc. v. Pittman, 419 U.S. 20, 34 (1974); Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 292-93 (1921). Likewise, Congress may prevent the circumvention of child support obligations by regulating what is essentially nonpayment of a debt where the judgment creditor and judgment debtor are in different states. See Mussari, 1996 WL 499163, at *3.

The CSRA also may be upheld because it regulates activities that are substantially related to and substantially affect interstate commerce. See Lopez, 115 S. Ct. at 1629-30. In enacting the CSRA, Congress made explicit findings concerning the impact of delinquent parents on interstate commerce. In 1989, approximately $5 billion of $16 billion in child support obligations were not honored. H.R.Rep. No. 771, 102d Cong., 2d Sess. 5 (1992) (Judiciary Committee). See also Statement by President Upon Signing S. 1002, 1992 U.S.C.C.A.N. 2908 (Nov. 2, 1992). About one-third of the unpaid child support obligations involved a delinquent father who lived in a different state than his

children.  Delinquent parents used the multistate system to evade enforcement efforts by individual states.  H.R.Rep. No. 771 at 5-6; <u>see also</u> 138 Cong. Rec. H7326 (daily ed. Aug. 4, 1992) (statement of Cong. Hyde).  Accordingly, in enacting the CSRA, Congress sought "to strengthen, not to supplant, State enforcement."  <u>Id.</u>

In order to conclude that Congress acted within the confines of the Commerce Clause, all we must find is a rational basis for Congress' finding that the regulated activity substantially affects interstate commerce.  <u>See</u> <u>Federal Energy Regulatory Comm'n</u>, 456 U.S. at 754.  Congress clearly considered the economic impact of delinquent parents and, in its discretion, concluded that the impact substantially affects interstate commerce.  Congress had a rational basis for so concluding and, as a result, acted within the power bestowed upon it under the Commerce Clause in enacting the CSRA.

## II.  <u>Tenth Amendment</u>

The Tenth Amendment provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  "'In a case . . . involving the division of authority between federal and state governments,' the inquiries under the Commerce Clause and the Tenth Amendment 'are mirror images of each  other.'"  <u>Kelley v. United States</u>, 69 F.3d 1503, 1509 (10th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1566 (1996) (quoting <u>New York v. United States</u>, 505 U.S. 144, 156 (1992)).  "If a power is

delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." New York, 505 U.S. at 156. To successfully demonstrate a violation of the Tenth Amendment, a claimant must show that the challenged statute or regulation regulates "states as states;" it addresses matters that are indisputably attributes of state sovereignty; and compliance with it would directly impair the State's ability to structure integral operations in areas of traditional state functions. Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 287-88 (1981).

In light of our holding that congressional enactment of the CSRA does not violate the Commerce Clause, Mr. Hampshire's Tenth Amendment argument fails. See Mussari, 1996 WL 499163, *5 ("If . . . Congress acts under one of its enumerated powers--here its power under the Commerce Clause--there can be no violation of the Tenth Amendment."). Moreover, the CSRA does not displace any approach taken by the state in addressing the problem of delinquent parents but rather supplements such state initiatives by fortifying law enforcement efforts and existing state penalties. Sage, 1996 WL 450640, *8.

### III. Soldiers' and Sailors' Civil Relief Act and Due Process

Mr. Hampshire claims that the state court's refusal to appoint counsel for his defense in the underlying divorce action violated both the Soldiers' and Sailors' Civil

Relief Act ("SSCRA") as well as his due process rights under the Fourteenth Amendment by denying him meaningful access to the court to challenge the child support order. Both claims present questions of law that we review de novo. See Patton v. TIC United Corp., 77 F.3d 1235, 1243 (10th Cir.), cert. denied, 116 S. Ct. 2525 (1996).

The SSCRA temporarily suspends enforcement of civil liabilities against people on active duty in the military "until after the court shall have appointed an attorney to represent the defendant and protect his interest." 50 U.S.C. App. §§ 510, 520(1). The district court found that the state court did violate the SSCRA by failing to appoint counsel for Mr. Hampshire but that such failure did not rise to the level of a due process violation. Hampshire, 892 F. Supp. at 1332.

We cannot agree that Mr. Hampshire was entitled to an attorney under the SSCRA. The language of the SSCRA is clear. "Military Service" is defined as "Federal service on active duty," and "active duty" is defined as including "the period during which a person in military service is absent from duty on account of sickness, wounds, leave, or other lawful cause." 50 U.S.C. App. § 511(1); see also Betha v. Martin, 188 F. Supp. 133, 134-35 (E.D. Penn. 1960) ("military service" means active duty in the federal armed services). An AWOL soldier is not absent due to "sickness, wounds, leave, or other lawful cause" and may not avail himself of the benefits under SSCRA. Harriott v. Harriott, 511 A.2d 1264, 1266 (N.J. Super. Ct. 1986). Mr. Hampshire's child support liability results from divorce proceedings filed against him in October 1986; he concedes that he was AWOL

from the military at this time. Hampshire, 892 F. Supp. at 1331. Because he was AWOL at the time of filing and throughout the divorce proceedings, Mr. Hampshire was not on "active duty" and is definitionally precluded by the plain language of the SSCRA from availing himself of its benefits. See 50 U.S.C. App. § 511(1). Because the state court did not violate Mr. Hampshire's rights under the SSCRA, we need not reach Mr. Hampshire's due process claim predicated on such a violation.

Mr. Hampshire also argues that his Fourteenth Amendment due process rights were violated because he had no meaningful opportunity as an AWOL soldier in a civilian prison to be heard in state court to challenge the divorce and child support actions that form the basis of his CSRA conviction. The Due Process clause, incorporated by the Fourteenth Amendment to apply to the states, only "applies when government action deprives a person of liberty or property." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Mr. Hampshire fails to articulate how the government prevented him from meaningfully defending himself while in prison or to identify a state law that prevented him from doing so. See Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554 (7th Cir. 1986) (state law required physical presence, even of incarcerated person, to obtain divorce). The district court properly rejected this claim.

## IV. Ex Post Facto

Mr. Hampshire asserts that his restitution order, which includes amounts accrued prior to the passage of the CSRA, runs afoul of the Ex Post Facto Clause by punishing

him for conduct that occurred prior to the passage of the CSRA. An ex post facto law is one that (1) criminalizes conduct that was legal when done; (2) inflicts greater punishment for an offense than was inflicted by the law in existence at the time the offense was committed; or (3) eliminates a defense available according to law at the time the offense was committed. Collins v. Youngblood, 497 U.S. 37, 42 (1990); see also United States v. Gerber, 24 F.3d 93, 96 (10th Cir. 1994). Mr. Hampshire's ex post facto challenge to the restitution order presents a question of law that we review de novo. United States v. Guthrie, 64 F.3d 1510, 1514 (10th Cir. 1995).

The CSRA provides that "the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(c). "Past due support obligation" is defined as "any amount . . . determined under a court order . . . that has remained unpaid for a period longer than one year, or is greater than $5,000." 18 U.S.C. § 228(d)(1). The district court invoked 18 U.S.C. § 3663, the Victim Witness Protection Act ("VWPA"), to order Mr. Hampshire to pay restitution in an amount of approximately $38,000, of which approximately $25,000 accrued prior to the passage of the CSRA.

Although Mr. Hampshire's restitution order takes into account amounts resulting from his failure to pay before the passage of the CSRA, he has not been charged or sentenced under the CSRA for any acts or omissions that occurred prior to its passage. Rather, Mr. Hampshire was indicted and convicted for his willful failure to pay past due

child support from January 1993 until December 1994, i.e., for his conduct <u>after</u> the passage of the CSRA.  I R. at 1.  The restitution ordered pursuant to the VWPA covered the amount of back child support owed on the date of sentencing.  The fact that a component of that amount accrued prior to the enactment of the statute is not determinative.  <u>See</u> <u>Spencer v. Texas</u>, 385 U.S. 554, 559-60 (1966) (considering past criminal conduct in determining the sentence for the offense of conviction); <u>United States v. Cabrera-Sosa</u>, 81 F.3d 998, 1001 (10th Cir.) (same), <u>petition for cert. filed</u>, (U.S. July 16, 1996) (No. 96-5205); <u>United States v. Cusack</u>, 901 F.2d 29, 32 (4th Cir. 1990).  What is determinative is whether the defendant was given fair notice of what his potential punishment would be for a violation of the statute in question.  <u>Weaver v. Graham</u>, 450 U.S. 24, 30 (1981).  Thus, even if we consider restitution to be punishment, there is no ex post facto problem.

Moveover, under the clear import of the CSRA, restitution is not a "punishment," although it is hardly surprising that a recalcitrant parent would so consider it.  We have previously indicated in other contexts that restitution orders issued pursuant to the VWPA are predominantly compensatory in nature, the purpose of which "is not to punish defendants . . . but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  <u>See</u> <u>United States v. Arutunoff</u>, 1 F.3d 1112, 1121 (10th Cir.), <u>cert. denied sub nom.</u> <u>DeVries v. United States</u>, 510 U.S. 1017 (1993); <u>see also</u> <u>United States v. Salcedo-Lopez</u>, 907 F.2d 97, 99 (9th Cir. 1990).  Unlike a forfeiture statute, the

VWPA seeks to compensate victims rather than punish defendants. See United States v. Dudley, 739 F.2d 175, 177 (4th Cir.1984). The Constitution's explicit prohibition against ex post facto laws applies only to those laws that inflict criminal punishment. United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 17 n. 13 (1977); see also United States v. Monsanto Co., 858 F.2d 160, 174-75 (4th Cir. 1988), cert. denied, 490 U.S. 1106 (1989). Mr. Hampshire's restitution order does not implicate the Ex Post Facto Clause because it does not inflict punishment upon him but rather seeks to compensate his child for his failure to pay his past due support obligation.

AFFIRMED.